W.G. TAYLOR, et al.,
Plaintiffs-Appellees,

v.

MISSOURI PACIFIC RAILROAD COMPANY, et al., Defendants-Appellants.

No. 85–3519.

United States Court of Appeals,
Fifth Circuit.

July 23, 1986.

---

Norton N. Newborn, Cleveland, Ohio, for United Trans.

Harry A. Rosenberg, Phelps, Dunbar, et al., New Orleans, La., for Missouri Pacific Railroad Co.

Harold A. Ross, Cleveland, Ohio, Louis L. Robein, Metairie, La., for plaintiffs-appellees.

Before GEE, POLITZ, and GARWOOD, Circuit Judges.

POLITZ, Circuit Judge:

The district court granted declaratory and injunctive relief sought by four individual plaintiffs and by the Brotherhood of Locomotive Engineers (BLE) pursuant to the Railway Labor Act (RLA), 45 U.S.C. §§ 151 *et seq.* 614 F.Supp. 1320 (E.D.La. 1985). Defendants Missouri Pacific Railroad Company (MOPAC) and the United Transportation Union (UTU) appeal, challenging the court's jurisdiction and its contractual interpretation. Concluding that the court had jurisdiction over the subject matter, that the claims are justiciable, and that the district court was correct in its analysis, we affirm.

## BACKGROUND

The four individual plaintiffs are employees of MOPAC and members of BLE, a craft union that is the exclusive bargaining representative for MOPAC's locomotive engineers. The individual plaintiffs are not engineers, however, but switchmen in MOPAC's Avondale, Louisiana yard, enjoying only a "first preference" to transfer into engine service. UTU is certified as the

exclusive bargaining representative for MOPAC's switchmen.

During 1983 and 1984 the individual plaintiffs were involved in company-level disciplinary or grievance proceedings. In each instance they requested representation by the BLE. MOPAC refused these requests on the grounds that the MOPAC–UTU collective bargaining agreement specified that only the UTU could represent a switchman at company-level disciplinary and grievance hearings.

The instant complaint sought: (1) a declaration that the provisions of the MOPAC–UTU collective bargaining agreement limiting switchmen to UTU representation at company-level proceedings violated the individual plaintiffs' rights under the RLA; (2) an injunction prohibiting enforcement of these provisions; and (3) damages, a claim subsequently waived.

MOPAC moved to dismiss the complaint, contending that the district court lacked jurisdiction because the claims involved disputes within the exclusive jurisdiction of the National Mediation Board (NMB), the National Railroad Adjustment Board (NRAB), or a special adjustment board. The district court found jurisdiction and, on the parties' cross-motions for summary judgment, held for the plaintiffs in a scholarly and comprehensive opinion. To the extent that the MOPAC–UTU exclusive representation provisions prevented a switchman from selecting his own union to represent him at company-level proceedings, the provisions were declared void and their enforcement enjoined.[1] MOPAC and UTU appeal.

## ANALYSIS

### Subject-matter Jurisdiction

Contending that the dispute at bar falls within the exclusive jurisdiction of the NMB, NRAB, or a special adjustment board, MOPAC challenges the court's jurisdiction over the subject matter. The point deserves serious consideration and discussion.

■ Under the RLA, disputes between an employer and its employees, and the union representing the employees, are characterized as "major," "minor," or "representation." Under 45 U.S.C. § 153 First (i), minor disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ... may be referred ... to the [National Railroad] Adjustment Board...." *See generally International Brotherhood of Teamsters v. Texas International Airlines, Inc.*, 717 F.2d 157 (5th Cir.1983) (*"IBT v. TIA"*). MOPAC vigorously maintains that plaintiffs' claims involve the interpretation of the MOPAC–UTU collective bargaining agreement. Notwithstanding MOPAC's skillful argument to the contrary, we conclude that the pertinent contractual provisions, reprinted in 614 F.Supp. at 1325–26, are clear and unambiguous and require no interpretation. Accordingly, the NRAB has no jurisdiction over plaintiffs' claims, and, *a fortiori*, neither would a special adjustment board. 45 U.S.C. § 153 Second (special adjustment board may decide "disputes of the character specified in" 45 U.S.C. § 153).[2]

MOPAC's argument that the plaintiffs' claims fall within the exclusive jurisdiction of the NMB is more substantial. The NMB has exclusive jurisdiction over representation disputes involving the determination of the proper representative of a class of employees. 45 U.S.C. § 152 Ninth; *IBT v. TIA*. At first blush, a functional analysis would reflect that MOPAC's position is sound. By gaining BLE representation at company-level proceedings, the argument posits, the plaintiffs could trigger a conflict between the BLE and the UTU. BLE representation of BLE-represented switchmen at company-level proceedings could, con-

---

1. The injunction was made prospective only since the claims of the individual plaintiffs had been mooted.

2. MOPAC does not argue that the instant claims present a "major dispute" under the RLA. *See* 45 U.S.C. § 156; *IBT v. TIA.*

ceivably, undercut UTU's position as the exclusive bargaining representative of the switchmen. Were such a dispute between BLE and UTU to occur, and were it to implicate UTU's bargaining position, we would be faced with a representation dispute within the NMB's exclusive jurisdiction. That is not, however, the situation presented by the instant case.

■ As the district court astutely recognized, it is the plaintiffs' position that the exclusive representation provisions at bar are *invalid* when applied to hearings involving switchmen who are not members of the UTU. Whether a provision of a collective bargaining agreement is valid is a legal decision, classic grist for the judicial mill. *Felter v. Southern Pacific Co.,* 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854 (1959). The district court properly took jurisdiction over this case. 614 F.Supp. at 1322. *Accord McElroy v. Terminal Railroad Ass'n of St. Louis,* 392 F.2d 966 (7th Cir.1968), *cert. denied,* 393 U.S. 1015, 89 S.Ct. 610, 21 L.Ed.2d 559 (1969); *Coar v. Metro-North Commuter R. Co.,* 618 F.Supp. 380 (S.D.N. Y.1985).

*Right of Representation*

■ The issue posed by this appeal is whether the provisions of the MOPAC–UTU collective bargaining agreement, limiting all switchmen, including those who are members of the BLE, to UTU representation at company-level grievance and disciplinary proceedings, are valid under the RLA. Finding no single provision of the RLA dispositive of this issue, we must attempt to divine congressional intent and priorities.

The general purposes of the RLA are set out in 45 U.S.C. § 151a:

The purposes of the Act are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this Act; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

In addition to the prohibition on "any limitation upon freedom of association among employees" contained in 45 U.S.C. § 151a(2), Section 2 Eleventh (c) of the RLA, 45 U.S.C. § 152 Eleventh (c), provides that while a collective bargaining agreement may require an employee to belong to a national labor union as a condition of employment, it cannot mandate which union. These provisions persuade us that Congress attached significant importance to an employee's freedom to choose his or her representative and to belong to the union preferred by the employee.

The right to associate freely with a national union of an employee's own choosing, and the effects of the exercise of that right, however, are not unlimited. In the instant case, for example, the BLE switchmen are not entitled to have BLE negotiate a separate collective bargaining agreement for them; rather, the terms and conditions of their employment necessarily are governed by the MOPAC–UTU agreement covering switchmen. *See, e.g., Steele v. Louisville & N.R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). On the other hand, given the apparent importance Congress attached to freedom of choice, that right should be limited only when compelled by express language of the RLA. We find neither statutory language mandating such a result nor compelling reason to limit the right of free choice in the instant case. Indeed, we perceive the opposite.

In exercising the freedom to choose membership in a national union, an employee may consider myriad factors: some personal, some business-related; some appar-

ent, others less apparent; some objectively, soundly based, others perhaps questionable; all reflecting the essence of free choice. An employee selecting a union opts for the benefits, burdens, and costs attendant upon membership in that union. In return, the union owes the member certain duties. The relationship is symbiotic. An obvious and primary benefit to the employee is the right to have the chosen union provide personal representation in any dispute the employee might have with the employer. Such typically are matters of great interest and concern to the individual employee.

Because the UTU was the exclusive bargaining agent for MOPAC's switchmen during the contract-negotiation process, the benefits of membership in the BLE were necessarily sublimated. To extend that sublimation beyond contract negotiation to include company-level grievance and disciplinary proceedings would render membership in the BLE nugatory, and make that union the equivalent of a social organization rather than a vital national labor union of railroad employees. That extension would effectively nullify the RLA's specific emphasis on the employee's freedom to choose a union in situations as are here presented.

The district court's decision manifestly is consistent with the stated goals of the RLA. Only specific language of the RLA would warrant rejecting the trial court's findings and conclusions. We have been cited to no such language, and find none.

The RLA provision applicable to company-level proceedings is § 2 Second, 45 U.S.C. § 152 Second, which provides:

> All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.

The language pertinent to the instant inquiry is "representatives designated and authorized ... to confer ... by the employ-

ees ... interested in the dispute." Does this language refer only to the certified bargaining agent, or does it include the national union to which the employee belongs? We are persuaded to the latter.

Under this statute, company-level proceedings are to involve a representative "designated ... by the employees ... interested in the dispute." The reference is not generic, it is individualized. The craft or body of switchmen might be interested only inferentially in a particular disciplinary or grievance hearing, which might be entirely fact-bound with no overriding policy implications. The individual, in such an instance, would have a vital interest; that individual is the employee "interested in the dispute." The individual should be permitted to select his or her representative. Only in that manner would the heralded right to free selection of union membership be accorded the status and dignity explicit and implicit in the relevant statutes.

We conclude by noting that our decision today accords with the holdings or leanings of our colleagues in the Seventh, Eighth, and Tenth Circuits. *McElroy; General Committee of Adjustment v. Burlington Northern, Inc.,* 563 F.2d 1279 (8th Cir. 1977); *Brotherhood of Locomotive Engineers v. Denver & R.G.W.R. Co.,* 411 F.2d 1115 (10th Cir.1969); *accord Coar.* We further note that our holding today creates no conflict between the RLA policy of freedom of union choice for the employee and the stated goals of company-level settlement of disputes, 45 U.S.C. § 152 First, and the transcending desire for labor-management stability. *See Coar,* 618 F.Supp. at 384 (quoting pertinent congressional testimony).

The judgment of the district court is AFFIRMED.