# LANDERS *v.* NATIONAL RAILROAD PASSENGER CORPORATION ET AL.

No. 86–2037.   Argued March 29, 1988—Decided April 27, 1988

WHITE, J., delivered the opinion for a unanimous Court.

*Clinton J. Miller III* argued the cause and filed briefs for petitioner.

*Harold A. Ross* argued the cause for respondents and filed a brief for respondent Brotherhood of Locomotive Engineers. *Joanna L. Moorhead, Harold R. Henderson,* and *Harry A. Rissetto* filed a brief for respondent National Railroad Passenger Corporation.*

JUSTICE WHITE delivered the opinion of the Court.

This case presents the question whether a railroad engineer is entitled under the Railway Labor Act, 44 Stat. (part 2) 577, as amended, 45 U. S. C. § 151 *et seq.,* to be represented at company-level grievance or disciplinary proceedings by a union other than his collective-bargaining representative.

## I

Petitioner is employed as a passenger engineer by respondent National Railroad Passenger Corporation (Amtrak).[1] Amtrak engineers are represented for purposes of collective bargaining by respondent Brotherhood of Locomotive Engineers (BLE). Petitioner does not belong to the BLE. Instead, he is a member and officer of the rival United Trans-

---

*\*George Kaufmann, John O. B. Clarke, Jr.,* and *Laurence Gold* filed a brief for the American Federation of Labor and Congress of Industrial Organizations et al. as *amici curiae.*

[1] Amtrak is subject to the federal labor statutes applicable to railroads. 45 U. S. C. § 546(b).

portation Union (UTU), which represents certain other crafts of Amtrak employees.

In February 1984, petitioner was charged with a violation of company work rules. An internal disciplinary hearing was convened pursuant to the BLE-Amtrak collective-bargaining agreement. Petitioner's request that the UTU be allowed to represent him at the disciplinary hearing was denied on the ground that the collective-bargaining agreement provided that only the BLE could represent engineers at company-level hearings.[2] Petitioner represented himself at the hearing. He received a 30-day suspension, which he has now served. He did not appeal his suspension to the National Railroad Adjustment Board.

Petitioner then filed suit in the United States District Court for the District of Massachusetts seeking declaratory and injunctive relief against both Amtrak and the BLE. He contended that his rights under the Railway Labor Act had been violated because UTU had not been allowed to represent him at the disciplinary hearing.

The District Court dismissed petitioner's complaint following a bench trial, and the Court of Appeals for the First Circuit affirmed. 814 F. 2d 41 (1987). The Court of Appeals concluded that neither the language nor the legislative history of the Railway Labor Act supported petitioner's contention that railroad operating employees have a statutory right to be represented by the union of their choice at company-level grievance and disciplinary proceedings. The court rejected as unpersuasive the contrary decision of the Fifth Circuit in *Taylor* v. *Missouri Pacific R. Co.*, 794 F. 2d 1082, cert. denied, 479 U. S. 1018 (1986).

We granted certiorari, 484 U. S. 962 (1987), to resolve the conflict between two Courts of Appeals over this question of federal railway labor law. We now affirm.

---

[2] Petitioner no longer challenges this construction of the BLE-Amtrak collective-bargaining agreement.

## II

Petitioner contends that § 2, Eleventh, of the Railway Labor Act, 45 U. S. C. § 152, Eleventh, provides railroad operating employees with a right to be represented by a "minority" union (*i. e.*, a union other than their collective-bargaining representative) at company-level grievance or disciplinary proceedings.

Section 2, Eleventh (a), permits a railroad and a union "duly designated and authorized to represent [its] employees" to enter into a union-shop agreement requiring "as a condition of continued employment, that . . . all employees shall become members of the labor organization representing their craft or class." An employee engaged in "engine, train, yard, or hostling service" may satisfy the requirement of membership in a labor organization, however, by "hold-[ing] or acquir[ing] membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services." § 2, Eleventh (c). It is not disputed in this action that § 2, Eleventh (c), permits petitioner to satisfy the union-shop provision of the BLE-Amtrak collective-bargaining agreement by holding membership in the UTU.

Neither § 2, Eleventh, nor any other provision of the Railway Labor Act expressly addresses what role, if any, a minority union is entitled to play in company-level grievance and disciplinary proceedings. For example, § 3, First (i), of the Act provides merely that disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes." 45 U. S. C. § 153, First (i). In contrast, § 3, First (j), specifies that, once such disputes reach the Adjustment Board level, "[p]arties may be heard either in per-

son, by counsel, or by other representatives, as they may respectively elect." 45 U. S. C. § 153, First (j).

We are unwilling to read into the Railway Labor Act a right to minority union participation in company-level grievance and disciplinary proceedings that Congress declined to put there. That Congress expressly provided railroad employees with the right to the representative of their choice in Adjustment Board proceedings, but did not do so with regard to any earlier phase of the dispute resolution process, is persuasive evidence that Congress did not believe that the participation of minority unions or other outsiders in company-level proceedings was necessary to accomplish the purposes of the Act.[3]

Indeed, the statutory purpose of "provid[ing] for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," 45 U. S. C. § 151a(5), might often be frustrated if employees could demand to be heard through the representative of their choice at grievance and disciplinary proceedings conducted on the employer's property. For example, many disputes might be resolved less expeditiously, or not at all, if employees had a statutory right to be represented at the company level by minority unions, which do not have the same established relationship with the employer as do official bargaining representatives or the same familiarity with how similar disputes have been resolved in the past.

---

[3] We note that Congress declined in 1934 to amend the RLA to provide that a railroad employee could select a representative other than his collective-bargaining representative to pursue his grievance with his employer. Such an amendment had been proposed by Joseph B. Eastman, Federal Coordinator of Transportation, and George M. Harrison, President of the Brotherhood of Railway and Steamship Clerks. See Railway Labor Act Amendments: Hearings on H. R. 7650 before the House Committee on Interstate and Foreign Commerce, 73d Cong., 2d Sess., 44, 89 (1934) (H. R. 7650 was the predecessor of H. R. 9861).

In addition, a minority union might use the grievance and disciplinary proceedings to undermine the position of the bargaining representative and thereby destabilize labor-management relations. A majority union's prosecution of employee grievances and defense of employee disciplinary charges "complemen[t] [its] status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract." *Republic Steel Corp.* v. *Maddox*, 379 U. S. 650, 653 (1965). As Professor Cox has recognized, if the bargaining representative is instead prevented from exercising control over the presentation of grievances, the opportunity arises for "dissident groups, who may belong to rival unions, . . . to press aggressively all manner of grievances, regardless of their merit, in an effort to squeeze the last drop of competitive advantage out of each grievance and to use the settlement even of the most trivial grievances, as a vehicle to build up their own prestige." Cox, Rights Under a Labor Agreement, 60 Harv. L. Rev. 601, 626 (1956). In such circumstances, "[t]he settlement of grievances could become the source of friction and competition and a means for creating and perpetuating employee dissatisfaction instead of a method of eliminating it." *Ibid.* The same potential for friction and competition exists, of course, when minority unions are allowed to participate in disciplinary proceedings such as those at issue here.[4]

We find no merit in petitioner's contention that the right of railroad operating employees to be represented by minority unions at company-level grievance and disciplinary proceedings is implicit in § 2, Eleventh (c).

This congressional intent underlying § 2, Eleventh (c), was extensively analyzed by the Court in *Pennsylvania R. Co.* v. *Rychlik*, 352 U. S. 480, 489 (1957). The Court there noted

---

[4] Of course, an employee may be entitled to be heard through the representative of his choice at company-level grievance and disciplinary proceedings if that has become the "usual manner" of handling disputes at his workplace.

that the different crafts in the railroad industry were often represented by different unions and that employees often shuttled back and forth between two crafts. A union-shop agreement would ordinarily have required such an employee either to "belong to two unions — one representing each of his crafts — or . . . to shuttle between unions as he shuttles between jobs." *Id.*, at 490. The former alternative would be "expensive and sometimes impossible," we observed, while the latter alternative would be "complicated and might mean loss of seniority and union benefits." *Ibid.* Accordingly, we concluded that Congress had enacted § 2, Eleventh (c), for the single narrow purpose of "prevent[ing] compulsory dual unionism or the necessity of changing from one union to another when an employee temporarily changes crafts." *Id.*, at 492.

This purpose has been fully achieved in the instant case. Petitioner has been accorded his statutory right to refrain from acquiring membership in the BLE — either instead of or in addition to his membership in the UTU — as a condition of his employment as an engineer by Amtrak. However, unless the UTU becomes the official bargaining representative for Amtrak engineers or the "usual manner" of processing disputes on the Amtrak property is changed, petitioner cannot claim the additional right to be represented by the UTU at company-level grievance and disciplinary proceedings.

There is no reason to believe that petitioner will suffer any appreciable prejudice if he cannot be represented by the UTU at grievance and disciplinary proceedings conducted on the Amtrak property. It is appropriate to assume that petitioner's interests will be adequately represented by the BLE, which owes the same duty of fair representation to all members of the bargaining unit regardless of their union affiliation. See *Steele* v. *Louisville & Nashville R. Co.*, 323 U. S. 192, 204 (1944). Moreover, if the dispute cannot be re-

solved at the company level, petitioner may be heard by the Adjustment Board through the representative of his choice. The judgment of the Court of Appeals is therefore

*Affirmed.*