Marvin E. CORZINE, James P. Herndon,
and United Transportation Union,
Plaintiffs–Appellants,

v.

BROTHERHOOD OF LOCOMOTIVE EN-
GINEERS and Illinois Central Railroad
Company, Defendants–Appellees.

No. 97–3961.

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1998.

Decided July 17, 1998.

Stephen A. Murphy, Chicago, IL, Clinton J. Miller, III, Kevin C. Brodar (argued), United Transportation Union, Cleveland, OH, for Plaintiffs–Appellants.

Harold A. Ross (argued), Ross & Kraushaar, Cleveland, OH, William L. Phillips, Chicago, IL, for Defendant–Appellee Brotherhood of Locomotive Engineers.

Ronald A. Lane, Illinois Central Railroad Company, Chicago, IL, Anthony J. Crement, Richard Verkler (argued), Edward N. Druck, Franczek, Sullivan, Mann, Crement, Hein & Relias, Chicago, IL, for Defendant–Appellee Illinois Central Railroad Company.

Before POSNER, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

■ The Illinois Central Railroad employs some 400 locomotive engineers, of whom 350 belong to the Brotherhood of Locomotive Engineers, which is the exclusive bargaining representative for the engineers employed by the IC, and the rest to the United Transportation Union. Last year the railroad and the engineers' union signed a collective bargaining agreement which provides that the union can levy a service fee on the engineers who belong to the UTU. The fee, which is capped at the dues that the engineers' union charges its own members, is said to be intended to compensate the union for the costs incurred by it in performing its duty of fair representation toward the UTU engineers. Because the union that is the bargaining representative of the workers in a bargaining unit has an implied duty under the Railway Labor Act to represent all members of the unit, whether or not they are members of the union, *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 74–75, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991), the engineers' union has a duty to represent engineers employed by the Illinois Central who are members of the UTU.

The record is oddly silent on how much the BLE dues are; and the service fee has not yet been set, because of this litigation. What is clear is that an engineer who refuses to pay the fee will not lose his job but that his seniority as an engineer will be frozen as of the date of the refusal, enabling other UTU engineers, those who do pay the service fee, as well as the BLE's members, to pass him on the seniority ladder and thus reduce his job security as an engineer.

■ The plaintiffs, consisting of two of the UTU engineers employed by the Illinois Central plus the UTU itself, insist that the

levying of a service fee on the UTU engineers violates the BLE's duty of fair representation. The duty can be violated only by a union, but the railroad is named as an additional defendant on the theory that by agreeing to the inclusion of the provision it became complicit with the union in violating the duty of fair representation. The theory is a permissible one, *Czosek v. O'Mara*, 397 U.S. 25, 28–29, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); *Steffens v. Brotherhood of Railway, Airline & Steamship Clerks*, 797 F.2d 442, 445 (7th Cir.1986); *Price v. Southern Pacific Transportation Co.*, 586 F.2d 750, 752 (9th Cir.1978), as is the naming of the UTU as a plaintiff. *United Food & Commercial Workers Union v. Brown Group, Inc.*, 517 U.S. 544, 546–53, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). The suit itself is proper because the claim that the duty of fair representation has been violated does not turn on the interpretation of the collective bargaining agreement, a task within the exclusive jurisdiction of the arbitral boards established by the Railway Labor Act. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). But the district court held that the defendants had not violated the duty of fair representation, and so granted summary judgment for them.

The plaintiffs argue that the engineers' union must provide its services as bargaining representative to the UTU engineers free of charge by virtue of section 2 Eleventh of the Act, 45 U.S.C. § 152 Eleventh. Subsection (a) permits a union-shop clause in collective bargaining agreements in the industries covered by the Act, but subsection (c), the focus of the plaintiffs' argument, provides that a worker can comply with such a clause by joining *any* of the national railroad unions, even if the union he joins doesn't represent the bargaining unit to which he belongs. So an Illinois Central engineer, represented necessarily by the BLE as exclusive bargaining representative of the engineers employed by that railroad, doesn't have to join the BLE, provided that he is a member of the UTU or of some other national union of railroad workers.

A bit of history is necessary for an understanding of the purpose behind subsection (c). At one time each craft in the railroad industry had its own union, so there were separate unions for firemen and engineers, as well as for conductors and other crafts. *Pennsylvania R.R. v. Rychlik*, 352 U.S. 480, 490, 77 S.Ct. 421, 1 L.Ed.2d 480 (1957); *Dempsey v. Atchison, Topeka & Santa Fe Ry.*, 16 F.3d 832, 836–37 (7th Cir.1994); *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry.*, 768 F.2d 914, 916–17 (7th Cir.1985). The BLE was the engineers' union; the UTU became, after mergers with other unions, the union of the firemen as well as of certain other classes of railroad worker. Aspirant engineers started as firemen, belonging to the UTU, and rose to be engineers, at which point they might want to belong to the BLE. But they would be reluctant to give up their membership in the UTU. The reason is that, under the collective bargaining agreements in the railroad industry, an engineer who retained his membership in the UTU would retain his seniority in the firemen's craft, which would be valuable to him should he ever lose his engineer's job to someone who had greater seniority as an engineer. He would not have to join the BLE as well because union-shop clauses were not authorized in collective bargaining agreements in the railroad industry. So in 1951, when section 2 Eleventh (a), a union-shop provision, was added to the Railway Labor Act, permitting collective bargaining agreements in the railroad industry to make it "a condition of continued employment" that "all employees shall become members of the labor organization representing their craft," which in the case of engineers is the BLE, Congress also added section 2 Eleventh (c), which allows engineers who belong to the UTU by virtue of having started as firemen to work as engineers without having to join the BLE in order to retain seniority in both crafts, notwithstanding the presence of a union-shop clause in the collective bargaining agreement between the BLE and the engineers' employer. Engineers are thus relieved of the dues expense of "dual unionism." *Pennsylvania R.R. v. Rychlik*, supra, 352 U.S. at 490–92, 77 S.Ct. 421; *Landers v. National Railroad Passengers Corp.*, 485 U.S. 652, 658, 108 S.Ct. 1440, 99 L.Ed.2d 745 (1988).

Eventually—the coal-powered locomotive having passed into history—the firemen's craft was abolished, *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry., supra*, 768 F.2d at 917, leaving the UTU as the exclusive bargaining representative of conductors and other train-service (as distinct from locomotive) employees. So how is it that the UTU contains engineers? Because the engineers come out of the ranks of these train-service employees, just as they used to come out of the ranks of the firemen; the vertical relation between the UTU and the BLE has continued. Eventually, too, the courts held that the union-shop provision of the Railway Labor Act was not to be read literally; that a worker didn't have to actually *join* a union—it was enough if he paid an agency fee representing the fraction of union dues allocable to the union's role as exclusive bargaining representative for his unit. *Ellis v. Brotherhood of Railway, Airline & Steamship Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984); *Brotherhood of Railway & Steamship Clerks v. Allen*, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963); cf. *International Ass'n of Machinists v. NLRB*, 133 F.3d 1012, 1015–16 (7th Cir.1998). So an engineer could pay either union dues or the agency fee to the UTU, thus retaining his seniority in the train service, while working as an engineer represented by the BLE.

The railroad appears not to care which union its engineers belong to. But, for the time being anyway, it has come down on the side of the BLE. Perhaps it expects reciprocal concessions from the BLE, which wants to tax UTU members with an additional service fee on top of the dues or agency fee that those members pay the UTU. In agreeing to such a tax in its collective bargaining agreement with the BLE, the railroad is complicit with the BLE, as the UTU contends. But the question remains whether what it is complicit in is a violation of subsection (c).

■ In earlier litigation between these unions, the parties' positions were reversed. The BLE was arguing that the UTU was in violation of subsection (c) by insisting that any engineer who wanted to retain his seniority in the train service had to pay full union dues to the UTU even if the engineer had joined the BLE. The UTU prevailed in every circuit to consider the issue, including this one. See *Dempsey v. Atchison, Topeka & Santa Fe Ry., supra*, 16 F.3d at 838; *Brotherhood of Locomotive Engineers v. Kansas City Southern Ry.*, 26 F.3d 787, 793 (8th Cir.1994); *Wightman v. Springfield Terminal Ry.*, 100 F.3d 228, 231–33 (1st Cir. 1996). The reasoning of these cases was simple. The joint effect of section 2 Eleventh (a), in making it a "condition of employment" that the worker belong to the union that represents his craft, and of (c), in providing that he can satisfy this requirement by belonging to any national railroad union, is that the collective bargaining agreement cannot require a railroad worker as a "condition of employment" to belong to two unions. In requiring engineers who wanted to preserve their train-service seniority to belong to the UTU (or pay the UTU's agency fee), however, the UTU wasn't conditioning their *employment* in the engineers' craft on their belonging to the UTU, but only their *retention of seniority* in the train service—a very different thing.

■ Now the shoe is on the other foot. The BLE is requiring the engineers who belong to the UTU to pay the BLE a service fee, but it is not conditioning employment as an engineer—only seniority—on the payment of the fee. Of course, seniority and employment are correlated. Indeed, the only reason anyone is interested in seniority is to maximize his chances for continued employment in the event of layoffs. But that was equally true in the other litigation. The BLE's position is actually stronger in this case than the UTU's was in the other cases. The BLE is not seeking to impose full union dues, or the full agency fee, on the UTU engineers, but only the actual cost of representing them. It is difficult to understand why, if the BLE has a statutory duty, as it does, to represent them, it cannot charge them for the actual costs of that representation. In the earlier litigation, the UTU engineers were being required to pay *full* union dues to protect a purely *contingent* right of seniority in the train service, and the courts said that was okay; here these engineers are being required to pay merely a service fee

for the seniority and other benefits that the engineers' union has negotiated for them in their current employment. The plaintiffs point to these differences as distinguishing the earlier cases; actually, the differences make those cases applicable to the present case *a fortiori.*

The real injustice here is not the BLE's insistence on a service fee, but the UTU's insistence on charging full union dues (or the full agency fee) to engineers for whom it appears to be doing very little: mainly, just maintaining their seniority against the day when they are laid off as engineers, a day that may never come for most of them. This residual seniority is a value—otherwise 50 engineers employed by the Illinois Central Railroad would not have remained members of the UTU—but the cost to the UTU of creating it may be much less than the dues that it exacts. The UTU's brief is silent on that cost, and at argument its lawyer, though an employee of the union, was unable to explain what expense is involved in retaining an engineer on the train-service seniority roster. No doubt there is some. The seniority of other train-service workers is rendered less secure, which makes their membership in the UTU less valuable to them. And at the higher stages of the grievance procedure established by the Railway Labor Act, an engineer has the option to be represented by someone other than the collective bargaining representative, 45 U.S.C. § 153 First (j); *Landers v. National Railroad Passengers Corp., supra,* 485 U.S. at 656, 108 S.Ct. 1440; *Graf v. Elgin, Joliet & Eastern Ry.,* 697 F.2d 771, 779 (7th Cir.1983), so that in principle and no doubt occasionally—but we have not been told how frequently—the UTU handles grievances for the engineers that belong to it. It is apparent, however, that the bulk of the expense entailed in the representation of the UTU engineers is borne by the BLE, yet the latter seeks only a service fee which cannot exceed its regular dues, whereas the UTU is charging the full union dues or agency fee to its engineer members. By getting seniority in two crafts as well as the full panoply of representative services, the UTU engineers are getting greater union benefits than BLE engineers, so it is not unreasonable that they should pay more. What would

be unreasonable, and fortunately is not required by the statute, is that they should have to pay everything to the UTU and nothing to the BLE, even though they are getting greater benefits from the latter than from the former and the latter is incurring greater costs than the former.

It strikes us that if the unions had the workers' interests at heart, they would sit down and negotiate a sharing agreement by which the costs of providing union services to the workers would be estimated and then allocated between the unions in proportion to the respective contributions of the unions to those costs. Instead, first the BLE and then the UTU tried to avoid negotiation by seeking the aid of the courts. That quest has failed, producing a situation in which UTU engineers are subject to exactions from two unions, exactions that may in the aggregate exceed the costs and benefits of the services that the two unions provide these workers. For this there is no remedy under section 2 Eleventh (c), and we shall not speculate on where if anywhere else in the law a remedy might be found.

AFFIRMED.