Patrick V. DELVECCHIO, et al, Plaintiffs,

v.

BROTHERHOOD OF LOCOMOTIVE ENGINEERS, et al., Defendants.

No. 96–CV–7875.

United States District Court, W.D. New York.

Dec. 23, 1998.

E. Joseph Giroux, of counsel, Buffalo, NY, Norton N. Newborn, of counsel, Norton N. Newborn Co., L.P.A., Cleveland, OH, for plaintiffs.

Joseph E. O'Donnell, of counsel, Collins & Collins, P.C., Buffalo, NY, Harold A. Ross, of counsel, Ross & Kraushaar Co., L.P.A., Cleveland, OH, Brotherhood of Locomotive Engineers, Andrew J. Rolfes, of counsel, Consolidated Rail, Corp., Klett, Lieber, Rooney & Schorling, Philadelphia, PA, for defendants.

## DECISION and ORDER

SIRAGUSA, District Judge.

The question to be decided on these summary judgment motions is whether a service fee, charged by the Brotherhood of Locomotive Engineers ("BLE") for representing non-BLE engineers, constitutes a violation of the Railway Labor Act, 45 U.S.C. § 152 Eleventh (c) and is a breach of the BLE's duty of fair representation under the Railway Labor Act, 45 U.S.C. § 152 Fourth. This very issue has been previously decided by the Seventh Circuit Court of Appeals in *Corzine v. Brotherhood of Locomotive Engineers,* 147 F.3d 651 (7th Cir., 1998), and this Court finds no reason to deviate from the logical conclusion reached in that case.

## BACKGROUND

The plaintiffs in this case include engineers for the Consolidated Rail Corporation, commonly known as Conrail, who are members of the United Transportation Union, and the United Transportation Union itself. The suit was filed December 30, 1996, and defendant Brotherhood of Locomotive Engineers filed a motion for summary judgment [12], as did defendant Conrail [16]. Plaintiffs also filed a motion for summary judgment [19]. Oral argument was heard before the Honorable William M. Skretny on November 7, 1997. Following oral argument, Judge Skretny reserved decision and transferred the case to this Court. Both plaintiffs and defendants filed supplemental memoranda and the case is now before this Court for decision on the summary judgment motions.

## FACTS

Plaintiffs Patrick Delvecchio, R.S. Book, E.D. Wagoner, and Demyron Walker are employed as engineers by defendant Conrail, holding seniority both as engineers and in train service. Each individual is a member of the plaintiff United Transportation Union, but not a member of defendant Brotherhood of Locomotive Engineers or its general committee. Plaintiff United Transportation Union ("UTU") is a labor organization, national in scope, organized under the Railway Labor Act, and admitting to membership employees in train service (conductors, brakemen, yardmen) and engine service (engineer) crafts. Approximately 550 of Conrail's Locomotive Engineers are members of the UTU. Approximately 2,250 are members of the Brotherhood of Locomotive Engineers. Plaintiff's statement of Undisputed Facts, at 2; The BLE/GCA Response to Plaintiff's Undisputed Facts, at 1. Defendant, Brotherhood of Locomotive Engineers, is a national labor union, organized under the Railway Labor Act, which represents the craft of locomotive engineers on all of the Class I railroads and most of the remainder of the nation's railroads. Defendant,

General Committee of Adjustment Brotherhood of Locomotive Engineers (the "GCA/BLE"), is the duly designated and authorized bargaining representative for the craft of locomotive engineers employed by Conrail, including the individual plaintiffs.

The UTU has union shop agreements with Conrail for the crafts it represents (conductors, brakemen, and yardmen). These agreements track the Railway Labor Act, 45 U.S.C. § 152 Eleventh, including subparagraph (c), which specifically permits any employee working in the engine and train service crafts to satisfy the union shop requirement by holding membership in any one of the national labor organizations, organized in accordance with such Act, and admitting to membership employees of a craft or class in engine, train, yard, or hostling service.

The "GCA/BLE" has a union shop agreement with Conrail for the craft it represents (engineer). This agreement comports with the language in the Railway Labor Act, 45 U.S.C. § 152 Eleventh (c), which permits membership in the UTU to satisfy the union shop requirement in the agreement between The "GCA/BLE" and Conrail. The history of the various railway unions is laid out in detail in the Seventh Circuit's opinion in *Corzine.*

A bit of history is necessary for an understanding of the purpose behind subsection (c) [of the Railway Labor Act, 45 U.S.C. § 152 Eleventh]. At one time, each craft in the railroad industry had its own union, so there were separate unions for firemen and engineers, as well as for conductors and other crafts.... The BLE was the engineers' union; the UTE became, after mergers with other unions, the union of the firemen as well as of certain other classes of railroad workers. Aspirant engineers started as firemen, belonging to the UTU, and rose to be engineers, at which point they might want to belong to the BLE. But they would be reluctant to give up their membership in the UTU.

The reason is that, under the collective bargaining agreements in the railroad industry, an engineer who retained his membership in the UTU would retain his seniority in the firemen's craft, which would be valuable to him should he ever lose his engineer's job to someone who had greater seniority as an engineer. He would not have to join the BLE as well because union-shop clauses were not authorized in collective bargaining agreements in the railroad industry. So in 1951, when section 2 Eleventh (a), a union-shop provision, was added to the Railway Labor Act, permitting collective bargaining agreements in the railroad industry to make it "a condition of continued employment" that "all employees shall become members of the labor organization representing their craft," which in the case of engineers is the BLE, Congress also added section 2 Eleventh (c), which allows engineers who belong to the UTU by virtue of having started as firemen to work as engineers without having to join BLE in order to retain seniority in both crafts, notwithstanding the presence of a union-shop clause in the collective bargaining agreement between the BLE and the engineers' employer. Engineers are thus relieved of the dues expense of "dual unionism."

*Corzine v. Brotherhood of Locomotive Engineers,* 147 F.3d 651, 653 (7th Cir., 1998) (citations omitted). According to the history laid out in the Seventh Circuit's opinion, the UTU became the exclusive bargaining representative of all train service employees other than engineers. Engineers were, as their predecessors the firemen, promoted from within the train service ranks. The parties maintain that since 1985 there have been an escalating number of train service employees transferring to engine service and remaining in engine service for a period of time. This was as a result of an agreement in 1985 by the UTU with Conrail whereby train service crafts became the preferred source of supply for new hires into engine service.

The post–1985 transferees hold seniority in both the train service crafts and the craft of locomotive engineers. The pre–1985 engineers had the option of being placed at the bottom of the seniority rosters for the train service crafts.

While the BLE is the collective bargaining representative for the craft of locomotive engineers on Conrail and charged with negotiating the labor agreements, individual engineers are entitled to have their grievance claims under the BLE Conrail contracts handled by the UTU representatives if they are members of the UTU. By agreement in February of 1992, Conrail and the UTU entered into Letter No. 13 which provides that the UTU shall have the exclusive right to represent all train service members in company level grievance, claim, and disciplinary proceedings. Thus, the "GCA/BLE" cannot process or handle claims, grievances, and disciplinary matters for its members who are working in the train service crafts.

An arbitrated agreement entered on June 29, 1992, granted "GCA/BLE" the exclusive right to represent all locomotive engineers, regardless of whether they were members of the "GCA/BLE" or the UTU, in company-level grievance, claim, and disciplinary proceedings. In 1996, the UTU reached a national agreement, which included Conrail, and covers all the crafts represented by the UTU on Conrail. The agreement was rendered by arbitration on May 8, 1996 and is referred to as the Award of Arbitration Board No. 559. Section 1(b) of Article IX–Seniority Accumulation, set forth in the UTU national agreement provides:

> Sixty (60) days after service of written request on the carrier by the organization's authorized representative(s), any employee with train service or hostler helper seniority working as a local engineer will be required, during the period of time he is working as a locomotive engineer, to pay monthly dues to the UTU in order to accumulate any additional seniority as conductor, trainmen,

hostler or hostler helper. The organization shall be responsible for administration of such arrangements.

The BLE litigated this particular provision, claiming that it was in violation of subsection (c), 45 U.S.C. § 152 Eleventh, of the Railway Labor Act. According to the Seventh Circuit, the "UTU prevailed in every Circuit to consider the issue, including this one. *See, Dempsey v. Atchison, Topeka Santa Fe Ry.,* 16 F.3d 832, 838 (7th Cir., 1994); *Wightman v. Springfield Terminal Ry.,* 100 F.3d 228, 231–33 (1st Cir., 1996)." *Corzine,* 147 F.3d at 654. As the Seventh Circuit so aptly put it, "[n]ow the shoe is on the other foot." *Corzine,* 147 F.3d at 654.

The "GCA/BLE" negotiated locally with Conrail and reached a collective bargaining agreement effective December 9, 1996. That agreement contained Article XIII–Seniority Accumulation, which is the contractual provision at issue in this case. Article XIII reads:

> SIXTY (60) days after service of written request on the Carrier by the General Chairman, any employee with locomotive engineers seniority working in train or engine service will be required, during the period of time he or she is working in train or engine service, to pay a monthly service fee not to exceed monthly dues to the Brotherhood of Locomotive Engineers (BLE) in order to accumulate any additional seniority as locomotive engineer. The Organization shall be responsible for administration of such arrangements.

According to defendant BLE, Chairman R. Godwin requested the inclusion of Article XIII so that engineers, whether working in the craft of locomotive engineers or working as train service employees, would share in the costs of negotiating the rates of pay, rules, working conditions, and fringe benefits in the GCA's/BLE's agreements. Article XIII requires non-BLE engineers to share in the expense of representation by the "GCA/BLE" in handling their claims, grievances and disciplinary

matters, and in protecting their continuous locomotive engineer seniority by paying a service fee based on the expenditures of the "GCA/BLE" and supporting entities in representing those people who do not pay the BLE dues as members.

The UTU argues that the inclusion of Article XIII is a condition of continued employment which is prohibited by the Railway Labor Act, 45 U.S.C. § 152 Eleventh (c). That particular subsection reads in pertinent part:

> (c) The requirement of membership in a labor organization in an agreement made pursuant to subparagraph (a) of this paragraph shall be satisfied, as to both a present or future employee in engine, train, yard, or hostling service, that is, an employee engaged in any of the services or capacities covered in the first division of paragraph (h) of section 153 of this Title ..., if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services; and no agreement made pursuant to subparagraph (b) of this paragraph shall provide for deductions from his wages for periodic dues, initiation fee, or assessments payable to any labor organization other than that in which he holds membership. . . .

The UTU argues that Article XIII conditions an engineer's employment in the engineer craft on his membership in the BLE. They further argue that the service fee required by Article XIII is the equivalent of union membership. The BLE counters that Article XIII is no different from the Award of Arbitration Board No. 559, Article IX, section 1(b) in the UTU national agreement, and which was upheld in the cases cited in the Seventh Circuit opinion.

## DISCUSSION

The United States Supreme Court, in *National Labor Relations Board v. General Motors Corp.*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), held that "agency shop" arrangements not forbidden by the individual states are permitted under the National Labor Relations Act. In that decision, the Supreme Court discussed the history of the Wagoner Act which "forbade employers to discriminate against employees to compel them to join a union." *Id.* at 738, 83 S.Ct. 1453. The unions responded with union-security arrangements such as the closed shop. Congress enacted the Taft–Hartley Act which outlawed the closed shop, but permitted union-security arrangements to exist. Congress's intent was to eliminate "free riders" from benefitting by the unions' negotiation and grievance resolution efforts without having to make any financial contribution to the union. The union-security arrangements permitted the union to charge non-union members a reasonable cost for the services rendered to the non-union members by the union, "if such labor organization is the representative of the employees as provided in section 9(a) . . . ." *General Motors*, 373 U.S. at 739, 83 S.Ct. 1453 (quoting H.R.Rep. No. 1147, 74th Cong., 1st Sess. 19).

Plaintiffs cite to *National Labor Relations Board v. General Motors Corporation*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), in support of their argument that requiring payment of fees equivalent to membership dues is the legal equivalent to mandating membership in a particular union. *See*, Plaintiff's Memorandum in Support of Motion for Summary Judgment [# 13] (hereinafter plaintiff's memorandum), at 8. They distinguish the agreement between the UTU and Conrail from the agreement between the BLE and Conrail by stating that the UTU agreement only applied when, and to the extent, the employee was not employed in the represented craft. "That is, the limitations on further accumulation of train service seniority in those cases only applied when the individual was employed outside of train service, the craft represented by

the UTU." Plaintiffs' memorandum [# 13], at 9. Plaintiff argues that the BLE agreement is "radically different in that it is applied not only when the individuals are working outside of engine service in train service . . . , but also applies directly where the individuals are in fact employed as engineers." Plaintiff's memorandum, at 9. Plaintiffs assert that as the sole bargaining agent for engineers, the BLE has a statutory duty of fair representation to the engineers who are members of the UTU. They further argue that the BLE violates that duty of fair representation by conditioning their engineer seniority ranking upon membership, or lack thereof, in the BLE, or payment of fees equivalent to membership dues in the BLE. Plaintiffs also allege that Article XIII violates subsection Eleventh (c) of 45 U.S.C. § 152 because it requires either membership, or its functional equivalent (payment of dues), in the BLE contrary to the statue which permits membership in *either* the UTU or the BLE to satisfy agency shop requirements.

Defendant Conrail alleges that the UTU is not challenging the seniority accumulation rule as it applies to employees who hold seniority as engineers but are not working as engineers. Memorandum of Law in Support of Defendant Consolidated Rail Corporation's motion for summary judgment [# 17] (Conrail memorandum), at 2. Conrail argues that the UTU's seniority accumulation rule is a mirror image of Article XIII, the BLE's seniority accumulation rule. *Id.*, at 2. The distinction is, according to Conrail, that the BLE's seniority accumulation rule applies while the employees are working "both within and outside of the craft of locomotive engineer—for which the BLE negotiates collective bargaining agreements." *Id.* Both Conrail and the BLE argue that an engineer, who is a member of the UTU, may satisfy Article XIII and maintain and continue to accumulate additional seniority as an engineer, by paying a service fee to the BLE which represents the BLE's costs for negotiating as the sole bargaining agent

for engineers. Failure to pay the service fee would result in no additional engineer seniority credit for the month during which the service fee is not paid. Brotherhood Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment [# 26] (the BLE memorandum), at 1–2; Conrail's memorandum, at 3.

It appears to the Court that an engineer who is a member of the UTU, but working as an engineer, must pay monthly dues to the UTU "in order to accumulate any additional seniority as conductor, trainmen, hostler or hostler helper," even if he or she works the entire month as an engineer. The UTU National Agreement, Article IX, Section 1(b). The BLE's Article XIII, at issue here, would require the same of engineers who are members of the BLE and working as non-engineers. The UTU's seniority accumulation provision has been upheld in several cases, three of which are, *Dempsey v. Atchison, Topeka & Santa Fe Ry.*, 16 F.3d 832, 838 (7th Cir.1994); *Brotherhood of Locomotive Engineers v. Kansas City Southern Ry.*, 26 F.3d 787, 793 (8th Cir.1994); *Wightman v. Springfield Terminal Ry.*, 100 F.3d 228, 231–33 (1st Cir.1996). The courts' upholding of UTU's seniority accumulation provision have distinguished retention of seniority from "condition of employment" and reasoned that the agreement did not breech Eleventh (c) of 45 U.S.C. § 152. *See Corzine*, 147 F.3d at 654.

Plaintiffs maintain that the UTU seniority accumulation provision "only applied when the individual was employed outside of train service, the craft represented by [the] UTU." Plaintiff's memorandum, at 9. Thus, an engineer member of the UTU, working as an engineer, would pay full dues to the UTU to continue to accumulate seniority in the train service crafts, and would pay full dues to the UTU when working in the train service crafts to be in compliance with the union shop requirements. An engineer member of the BLE would apparently pay full dues to both the

BLE and the UTU to continue to accumulate seniority in the train service crafts while working as an engineer, and would pay full dues only to the BLE when working in the train service crafts. It is this difference in the seniority accumulation to which plaintiffs point and argue that this difference proves that the BLE has violated its duty of fair representation.

This issue was addressed in *Corzine.* The Seventh Circuit stated, "[i]t is difficult to understand why, if the BLE has a statutory duty, as it does, to represent them [engineer members of the UTU], it cannot charge them for the actual costs of that representation." *Corzine,* 147 F.3d at 654. Plaintiffs counter that *Corzine* errs in its dismissal of the duty of fair representation which plaintiffs would have the BLE undertake *gratis* for engineer members of the UTU. *See* Supplemental Memorandum of Plaintiffs Re: *Corzine, et. al. v. Brotherhood of Locomotive Engineers and Illinois Central Railroad* (filed Feb. 19, 1998). Plaintiffs cite *Ferro v. Railway Express Agency, Inc.,* 296 F.2d 847 (2nd Cir.1961) and *Jones v. Trans World Airlines,* 495 F.2d 790, 797 (2nd Cir.1974) to argue that

> [a]n agreement by the exclusive representative as to its bargaining unit that allocates seniority or other benefits within that unit based upon matters extraneous to the working conditions or the jobs such as political factions within the organization, . . ., or union membership, . . ., or other forms of financial support, would be proscribed.

The Court finds no evidence in this record that seniority accumulation under Article XIII is a "condition of employment"; thus, Article XIII does not violate 45 U.S.C. § 152 Eleventh (c), nor does the Court find that the BLE breached its duty of fair representation. Unlike *Ferro,* 296 F.2d 847, 851, the seniority accumulation provision, Article XIII, does not "draw distinctions among [the employees] which are based upon their political power within the union."

■ "The objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit," *Jones v. Trans World Airlines, Inc.,* 495 F.2d 790, 798 (2nd Cir.1974).

The duty of fair representation is one which arises as a corollary to a union's right to act as the exclusive representative of a group of employees. This duty is not stated explicitly in any of the federal labor relations laws, but has been found by the Supreme Court to arise by implication from the right of exclusive representation granted by the Railway Labor Act, as amended, 45 U.S.C. § 151, *et. seq.,* and the National Labor Relations Act, as amended, 29 U.S.C. § 141, *et. seq.* The seminal decision of the Supreme Court on the duty of fair representation is *Steele v. Louisville & N.R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). There the railroad employer and the union representing locomotive firemen agreed to a provision in a collective bargaining agreement which had the effect of greatly limiting the employment opportunities of Negro firemen who were not members of the union. The Supreme Court concluded that "Congress, in enacting the Railway Labor Act and authorizing a labor union, chosen by a majority of a craft, to represent the craft, did not intend to confer plenary power upon the union to sacrifice, for the benefit of its members, rights of the minority of the craft, without imposing on it any duty to protect the minority." *Id.* at 199, 65 S.Ct. 226.

*Bowman v. Tennessee Valley Authority,* 744 F.2d 1207, 1211 (6th Cir.1984).

■ It was in *Wightman v. Springfield Terminal Ry. Co.,* 915 F.Supp. 503, 504 (D.Mass.1996), that the BLE argued it would be forced to either "raise the dues of its remaining members or to negotiate a seniority maintenance fee of its own with Springfield Terminal," in response to the UTU's seniority maintenance fee. Al-

though 45 U.S.C. § 152 Eleventh (c) prohibits an employer from requiring membership in both unions as a condition of employment, the parties are free to contract for seniority within the bargaining unit. *See Dempsey v. Atchison, Topeka & Santa Fe Ry. Co.*, 16 F.3d 832, 839 (7th Cir.1994) (citations omitted). If seniority in the engineer craft is a benefit to the UTU member engineers, then they can pay the reasonable costs associated with accumulating seniority in the engineer craft, including the costs associated with bargaining for engineers' benefits and working conditions and resolving grievances. Nothing in Article XIII requires membership in the BLE as a condition of continued employment. Thus, membership in the UTU satisfies the requirements of 45 U.S.C. § 152 Eleventh (a) and the seniority accumulation provisions of Article XIII do not violate subsection Eleventh (c). It is therefore,

ORDERED that Plaintiffs' motion for summary judgment [19] is denied and Defendants' motions for summary judgment [12 & 16] are granted.

IT IS SO ORDERED.