# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2166

_____

| | | |
|---|---|---|
| L. N. McClendon; Brotherhood of | * | |
| Locomotive Engineers and Trainmen, | * | |
| | * | |
| Plaintiffs - Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| Union Pacific Railroad Company, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: January 12, 2011
Filed: May 19, 2011

_____

Before WOLLMAN, LOKEN, and SMITH, Circuit Judges.

_____

LOKEN, Circuit Judge.

Historically, railroad engineers were members of the Brotherhood of Locomotive Engineers and Trainmen ("BLET"); conductors and other trainmen were members of the United Transportation Union ("UTU"). Today, with railroad jobs consolidated in a reduced workforce, engineers often work as trainmen and vice versa. But the unions have not merged, and the Railway Labor Act provides that an employee need only be a member of one union while working in any train service capacity. 45 U.S.C. § 152 Eleventh (c). The result is that a member of one union may be disciplined while working under the other union's collective bargaining agreement. This situation has created recurring litigation and perplexing

"jurisdictional" disputes, as this appeal illustrates. See generally Landers v. Nat'l R.R. Passenger Corp., 485 U.S. 652, 656-58 (1988); Ryan v. Union Pac. R.R., 286 F.3d 456, 458-59 (7th Cir.), cert. denied, 537 U.S. 880 (2002).

The Union Pacific Railroad Company ("UP") terminated L. N. McClendon, a member of the BLET, while he was working under a governing collective bargaining agreement between the UP and the UTU (the "UP-UTU Agreement"). The BLET filed a grievance (claim) with the UP seeking reinstatement and backpay. The UP denied the grievance, and the BLET filed an arbitration claim with the National Railroad Adjustment Board ("the NRAB"), the Railway Labor Act's preferred method of resolving "minor" disputes. See 45 U.S.C. § 153 First (i); Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen, 130 S. Ct. 584, 591 (2009). After the NRAB dismissed the claim as procedurally defective, McClendon and the BLET ("Plaintiffs") filed this lawsuit to set aside the NRAB Award. The district court[1] denied discovery requests and granted summary judgment for the UP. Plaintiffs appeal. We affirm.

The BLET grievance alleged, *inter alia*, that the UP, in terminating McClendon, improperly interpreted Article 12 of the UP-UTU Agreement, governing layoffs and leaves of absence. While processing the grievance "on property,"[2] the UP warned at least twice that the BLET was not the proper party to represent McClendon because he was terminated while working under the UP-UTU Agreement.

After the UP denied the grievance, the BLET filed a claim for McClendon with the NRAB's First Division, which has jurisdiction over disputes involving train

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

[2]The initial processing of a grievance by the railroad employer is known as the "on-property" stage of the claim. See Union Pacific, 130 S. Ct. at 591.

service employees. 45 U.S.C. § 153 First (h). The NRAB issued a "Third Party Notice" seeking the views of the UTU, which urged the arbitration Board to dismiss the claim because (i) it was not timely presented to the UP *by McClendon* as required in Article C-16 of the UP-UTU Agreement,[3] and (ii) it was not "handled in the usual manner" under the Railway Labor Act, as required by the NRAB's rules, see 29 C.F.R. § 301.2(b), because the BLET had no jurisdiction to interpret the UP-UTU Agreement and therefore "the case should have been forwarded to the UTU to handle." Though the UTU believed that the termination violated Article 12(C) of the UP-UTU Agreement, it urged the NRAB to dismiss the procedurally barred claim rather than "undo the errors of others."

The NRAB dismissed the claim. After noting that it had jurisdiction, the NRAB concluded that the BLET has "no representation rights" for conductors, like McClendon, who are covered by the UP-UTU Agreement; that Article C-17 of the Agreement "unquestionably vests" in the UTU the right to represent conductors in matters involving interpretation of Article 12 of the UP-UTU Agreement; and that the BLET "had no authority to progress the instant claim." Accordingly, the Award ended, "we find that the clear language of the Agreement is controlling and we are compelled to dismiss this claim." McClendon and the BLET then filed this suit to vacate and set aside the NRAB Award. Applying the relevant standard of review, which is "among the narrowest known to the law," Union Pac. R.R. v. Sheehan, 439 U.S. 89, 91 (1978) (quotation omitted), the district court concluded that it could not disturb the NRAB's interpretation of the UP-UTU Agreement. Plaintiffs appeal. We

_____

[3]Article C-16 provided in relevant part: "1. All claims must be presented in writing by the employe[e] involved . . . to the officer of the Company authorized to receive same within 30 days from the date of the occurrence on which the claim is based, otherwise claim is thereafter barred." The UTU argued that the claim was "procedurally defective" because McClendon never filed a claim with the UP and the BLET General Chairman did not appeal to the proper UP officer.

review the grant of summary judgment *de novo*, applying the same standard as the district court. Brooks v. Union Pac. R.R., 620 F.3d 896, 899 (8th Cir. 2010).

Plaintiffs argue that the NRAB violated the UP-UTU Agreement by "legislat[ing] . . . right out of the contract" the second sentence of Article C-17, which provides:

> The right to represent conductors or trainmen in making and interpreting agreement, rules and rates of pay, and in handling seniority for conductors and trainmen shall be vested in the regularly constituted committee representing the conductors and trainmen employed by the [UP]. This, however, does not abridge the right of any conductor or trainman to take up a personal grievance with the officials of the Railroad, either by a personal representative or through the Committee of the organization with which it is affiliated.

But the NRAB did not ignore this contract provision. It determined that the second sentence did not apply to McClendon's claim because that sentence "deals with taking up a 'personal grievance' as opposed to the claim involving an interpretation [of Article 12] of the UTU Agreement improperly progressed to the First Division by the BLET." Under the narrow standard of review prescribed by the Railway Labor Act in 45 U.S.C. § 153 First (q), we may not reconsider the NRAB's interpretation of the UP-UTU Agreement. "[T]he question . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." Hill v. Norfolk & W. Ry., 814 F.2d 1192, 1194-95 (7th Cir. 1987); see Finley Lines Joint Protective Bd. v. Norfolk So. Ry., 312 F.3d 943, 946 (8th Cir. 2002); Bhd. of Maint. of Way Emps. v. Soo Line R.R., 266 F.3d 907, 909-10 (8th Cir. 2001).

Plaintiffs suggest the NRAB's interpretation of Article C-17 violated 45 U.S.C. § 153 First (j) ("Parties may be heard [by the NRAB] either in person, by counsel, or

by other representatives, as they may respectively elect . . . ."). We disagree. The RLA provides that, at the on-property stage, disputes "shall be handled in the usual manner." 45 U.S.C. § 153 First (i). This provision "allows the railroad and the union to prescribe *in the collective bargaining agreement* the manner in which grievance proceedings shall be conducted on the property." Ryan, 286 F.3d at 459 (emphasis in original). The NRAB construed Article C-17 as requiring that claims involving interpretation of the UP-UTU Agreement be progressed on- property by the UTU, an interpretation we may not overturn. The Board then dismissed the claim as procedurally barred by the failure to comply with 29 C.F.R. § 301.2. It did not address whether § 153 First (j) would have permitted McClendon to be represented by the BLET (or anyone else) if his claim had been properly before the Board.

McClendon and the BLET next argue that the NRAB violated its obligations under the RLA by refusing to adjudicate the merits of McClendon's claim in a "jurisdiction-type ruling." The contention is without merit. This is not a case where the NRAB "refus[ed] to adjudicate . . . on the false premise that it lacked power to hear" the case. Union Pacific, 130 S. Ct. at 599. The Board explicitly noted that it had jurisdiction and dismissed the claim because, procedurally, it was not progressed to arbitration in the manner required by the UP-UTU Agreement as construed by the NRAB and therefore failed to comply with 29 C.F.R. § 301.2. The Board invoked a "claim-processing" rule, not a jurisdictional prerequisite. Union Pacific, 130 S. Ct. at 598. Plaintiffs' non-compliance with the rule was timely raised, and the NRAB acted well within its power to enforce it. See id. at 598 n.9 (the NRAB has authority to adopt such rules "backed by effective sanctions").

Plaintiffs characterize the NRAB's unfavorable interpretation of the UP-UTU Agreement as a "new jurisdictional rule" that violated McClendon's right to due process by overlooking Plaintiffs' justifiable reliance on past instances in which the BLET handled on-property conductor grievances under the UP-UTU Agreement and was allowed to progress grievance denials to the NRAB. But there was no unfair

surprise in this case, much less a due process violation. The NRAB Rules and the RLA expressly state that a claim may not be arbitrated unless it has been progressed in the usual manner. See 45 U.S.C. § 153 First (i); 29 C.F.R. § 301.2. The UP twice warned McClendon the BLET was not the proper party to progress his claim. The NRAB was well within its authority in construing the UP-UTU Agreement as enunciating the "usual manner" in this workplace. Compare Ryan, 286 F.3d at 459.

McClendon and the BLET make the related argument that the NRAB failed to consider all the relevant contracts, specifically, the BLET's independent agreement with the UP, and contend that the UTU did not acquire the contractual right of exclusive representation until after the handling of McClendon's on-property grievance. But, once again, these are matters of contract interpretation left to the NRAB. Moreover, Landers makes clear there are good reasons not to construe a collective bargaining agreement as allowing a minority union to participate actively in administration of the contract. 485 U.S. at 656-58. Once the NRAB determined that the UP-UTU Agreement was controlling -- a determination we may not revisit -- the other agreements and bargaining history became largely irrelevant.

Finally, Plaintiffs argue that the district court abused its discretion by denying their requests for discovery pertaining to the past practices and relationships between the UP, the BLET, and the UTU. See Marksmeier v. Davie, 622 F.3d 896, 903 (8th Cir. 2010) (standard of review). Plaintiffs completely fail to explain how the requested discovery would have affected judicial review of the NRAB's procedural dismissal. As we see it, discovery would not have justified setting aside the NRAB's interpretation of the UP-UTU Agreement, nor would it have uncovered a due process violation by the NRAB. There was no clear abuse of discretion.

The judgment of the district court is affirmed.

_____

-6-