# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2699

_____

| | | |
|---|---|---|
| Equal Employment Opportunity Commission, | * | |
| | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Minnesota Department of Corrections; | * | |
| American Federation of State, | * | |
| County and Municipal Employees, | * | |
| Unit 208; Minnesota Association of | * | |
| Professional Employees; Middle | * | |
| Management Association; American | * | |
| Federation of State, County and | * | |
| Municipal Employees, Council No. 5, | * | |
| AFL-CIO; Minnesota Nurses | * | |
| Association, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Minnesota Law Enforcement | * | |
| Association, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: March 16, 2011
Filed: August 10, 2011

_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Minnesota Law Enforcement Association (MLEA) appeals the district court's[1] grant of summary judgment to the Equal Employment Opportunity Commission (EEOC), concluding as a matter of law that MLEA's retirement plan arbitrarily discriminates against older employees on the basis of age, in violation of the Age Discrimination in Employment Act (ADEA). For the reasons that follow, we agree with the district court's conclusion and affirm its grant of summary judgment to EEOC.

## I. *Background*

The Minnesota Department of Corrections (DOC) is a state agency that operates ten correctional facilities within Minnesota. DOC employees who hold certain positions within the agency participate in either the Correctional Employee Retirement Plan or the State Patrol Retirement Fund. Minnesota law governs the plans and allows agency-employers like DOC and their employees to contribute to the plans at higher rates than other state retirement plans permit. Moreover, Minnesota law also authorizes agencies like DOC to

> establish optional annuity forms to pay a higher amount from the date of retirement until an employee is first eligible to draw Social Security benefits, reaches age 65, or reaches the age the employee is eligible to receive unreduced Social Security benefits, at which time the monthly benefits must be reduced.

Minn. Stat. § 352.93, subdiv. 3(a).

DOC included in its collective-bargaining agreements with the various labor unions representing its employees an "Early Retirement Incentive Program" (ERIP)

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

provision. The parties refer to this provision as the "age 55 cliff." Specifically, the ERIP provides that a plan participant who retires during the pay period of his or her 55th birthday, and is covered by the Correctional Employee Retirement Plan or the State Patrol Retirement Fund, is eligible to receive an unreduced continuation of the employer's contribution toward his or her health- and dental-insurance premiums until he or she reaches age 65. This contribution thereby encourages early retirement for this age group. Meanwhile, any employee between the ages of 50 and 55 who elects to retire—and who has a certain length of tenure with the agency—receives an ERIP benefit but less.[2] Finally, any employee between the ages of 55 and 60—60 being the age of mandatory retirement—who chooses to retire receives no continuation of employer contributions. As the EEOC succinctly summarizes in its brief, "[t]he age 55 cliff meant that, in order to obtain this benefit, employees must retire at 55, or forever lose the opportunity to obtain the benefit. . . . Employees hired after age 55 never could obtain the early retirement benefit."

Amid growing concern that a court might consider this ERIP unlawfully discriminatory, various state agencies and their respective employee unions eliminated the ERIP from their collective bargaining agreements. Only MLEA, the official labor union representing all non-supervisory DOC personnel, refused to negotiate any modification to the ERIP. Consequently, in September 2008, EEOC sued DOC and MLEA for injunctive and monetary relief, alleging that their collective-bargaining agreement's ERIP unlawfully discriminated against state employees on the basis of age, in violation of the ADEA.

---

[2]As the district court observed, "[t]he [collective-bargaining agreement] between [DOC] and [MLEA] is slightly different, allowing employees between the ages of 50 and 55 to retire and receive a continuation of benefits until age 65. MLEA-covered employees who retire before age 55 receive a reduced benefit; those who retire at age 55 receive full benefits."

On April 8, 2010, the district court granted summary judgment in EEOC's favor and against DOC and MLEA. In granting summary judgment, the district court first determined that the ERIP was facially discriminatory, in that it denied employees certain benefits solely on the basis of their age. Second, the district court, relying almost entirely on our decision in *Jankovitz v. Des Moines Independent Community School District*, 421 F.3d 649, 653 (8th Cir. 2005), rejected DOC's and MLEA's argument that the facially discriminatory ERIP fell within the ADEA's ERIP "safe harbor." Presently, only MLEA appeals this ruling.

## II. *Discussion*

On appeal, MLEA maintains that its collective-bargaining agreement's ERIP does not discriminate against employees on the basis of their age and thus comports with the ADEA.

"We review the grant of summary judgment *de novo*, applying the same standard as the district court." *McClendon v. Union Pac. R.R. Co.*, 640 F.3d 800, 803 (8th Cir. 2011). As is its name implies, "[t]he ADEA prohibits employers from discriminating against any individual on the basis of age with respect to his or her 'compensation, terms, conditions, or privileges of employment,' which specifically encompass 'all employee benefits.'" *Jankovitz*, 421 F.3d at 653 (quoting 29 U.S.C. §§ 623(a), 623(*l*) . Pertinent to our analysis is the "affirmative defense under 29 U.S.C. § 623(f)(2)(B)(ii), which was added to the ADEA by Congress's enactment in 1990 of the Older Workers Benefits Protection Act (OWBPA)[, Pub. L. No. 101-433, § 103(1), 104 Stat. 978, 978–79]." *Id.* at 651. Specifically,

> Congress enacted the [OWBPA] in response to the Supreme Court's decision in *Pub. Employees Ret. Sys. v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989) (holding that the ADEA applies only to hiring, firing, wages, salaries, and "other non-fringe-benefit terms and conditions of employment"), in order to clarify that the ADEA applies to all employee benefits, including early retirement benefits.

-4-

*Id.* at 651 n.4. Under MLEA's ERIP, no employee over the age of 55 is eligible for the early-retirement benefits that the ERIP offers. As this court recognized in *Jankovitz*, where, as here, "it is undisputed that an employee is ineligible for early retirement benefits under the . . . ERIP if he or she is over [a certain] age," the ERIP is "discriminatory on its face." *Id.* at 653.

Still, Congress included in the OWBPA an ERIP "safe-harbor" provision that insulates an employer from ADEA liability so long as the employer's ERIP satisfies certain criteria. Accordingly, the dispositive question is whether MLEA's otherwise invalid ERIP qualifies for protection under the ADEA's safe-harbor provision. That safe-harbor provision states:

> It shall not be unlawful for an employer, employment agency, or labor organization—
>
> * * *
>
> (2) to take any action otherwise prohibited under subsection (a), (b), (c), or (e) of this section—
>
> * * *
>
> (B) to observe the terms of a bonafide employee benefit plan—
>
> * * *
>
> (ii) that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of this chapter.

29 U.S.C. § 623(f)(2)(B)(ii). Thus, under the ADEA's ERIP safe harbor, a facially discriminatory ERIP like MLEA's is only lawful if it is (1) voluntary and (2) "consistent with the relevant purpose or purposes of [the ADEA]." 29 U.S.C. § 623(f)(2)(B)(ii). Notably, because the ADEA's ERIP safe harbor constitutes a

statutory affirmative defense, the defendant, MLEA, bears the burden of demonstrating that its ERIP meets these requirements. *Jankovitz*, 421 F.3d at 654 (citing 29 U.S.C. § 623(f)(2)).

In *Jankovitz*, this court determined that an ERIP, identical to the instant MLEA ERIP in all material respects, failed to satisfy the ADEA's ERIP safe harbor. In *Jankovitz*, the ERIP

> offered its employees early retirement benefits that included payment of health insurance premiums until the age of 65 and a one-time cash payment equal to approximately thirty percent of the employee's annual salary. . . . [D]efendant [later] amended its early retirement benefits plan so that eligible teachers could receive a lump sum payment based upon the number of unused sick leave days accumulated as of the date of retirement.

*Id.* at 650. Specifically, the *Jankovitz* court determined that plans of this nature which effect "adverse changes in employment benefits based solely upon age are inconsistent with the purposes of the ADEA." *Id.* at 655. In reaching this conclusion, the court first recognized that, among the ADEA's stated purposes, the "relevant purpose" in the ERIP context is the ADEA's aim of "prohibit[ing] arbitrary age discrimination in employment." *Id.* at 654 (citing 29 U.S.C. § 621(b)). From this first premise, the court reasoned that "[a]rbitrary age discrimination occurs when an employer denies or reduces benefits based *solely* on an employee's age," concluding that "[t]hat is precisely what defendant's amended ERIP does." *Id.* Likewise, that is precisely what MLEA's ERIP does. An employee's eligibility for the attractive early-retirement benefits vanishes when that employee reaches 55 years of age, considering no other factors. Indeed, "[t]he basis for our conclusion" that the *Jankvoitz* ERIP was "inconsistent with a purpose of the ADEA [was] the fact that the amount of available early retirement benefits drops to zero upon an employee's attainment of the age of

65." *Id.* at 655. This exclusively age-based reduction in benefits typifies "arbitrary age discrimination" and therefore fails to meet the ADEA safe harbor's requirements.

Nevertheless, MLEA counters that, because other portions of the ADEA explicitly authorize state agencies to compel the retirement of firefighters and law enforcement at age 55, *see* 29 U.S.C. § 623(j), MLEA's ERIP cannot logically be viewed as inconsistent with the ADEA's relevant purposes. According to MLEA, "[i]t is axiomatic that, where Congress has declared that law enforcement officers may be *required* to retire at age 55, a program that *incents* them to do so is not inconsistent with the purpose of the ADEA." MLEA's argument is superficially appealing. However, we stated in *Jankovitz* that "[a]ge discrimination can be established with respect to employee benefits regardless of whether the employer was required to provide the benefits in question to its employees." 421 F.3d at 653. Thus, although DOC is not obliged under federal law to employ certain persons over the age of 55 for reasons that may include age, it may not discriminate against all persons over age 55 solely due to their age.

For an example of an ERIP that does qualify for ADEA safe-harbor protection, MLEA need look no further than our decision in *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034 (8th Cir. 2007). In *Morgan*, we affirmed the validity, under the ADEA's safe-harbor provision, of an ERIP that allowed all employees who were age 50 or older and had at least 15 years of service to retire early in exchange for certain severance benefits, which included one year's salary, a lump-sum bonus payment, one year's health coverage and basic life insurance, and the right to vest in an unvested portion of deferred compensation. *Id.* at 1037. Contrasting that ERIP to the invalid one in *Jankovitz*, we explained that,

> [c]ontrary to Morgan's argument, the [ERIP] differs substantially from the faulty *Jankovitz* plan and is more akin to the valid *Auerbach*[3] plan. The [ERIP] does not favor younger employees over older employees. Rather, employees who were age 50 or older with fifteen or more years of service were eligible for the [ERIP]. The [ERIP] offered the same incentives to all eligible persons and did not employ an age-based phase-out where plan benefits decreased over time or were reduced to zero upon a certain age in order to encourage employees to participate in the plan. Because the [ERIP] does not arbitrarily discriminate on the basis of age, the plan is consistent with the purposes of the ADEA.

*Id.* at 1042.

In contrast to the permissible ERIP that we reviewed in *Morgan*, the instant ERIP, by operation of its "age-55 cliff," *does* arbitrarily discriminate on the basis of age. In turn, the arbitrary age discrimination that the age-55 cliff works renders the ERIP inconsistent with the ADEA's relevant purpose, *Jankovitz,* 421 F.3d at 654, and consistency with the ADEA's purposes is one of the twin prerequisites for protection under the ADEA's ERIP safe harbor.[4] 29 U.S.C. § 623(f)(2)(B)(ii). Thus, because

---

[3]*Auerbach v. Bd. of Educ. of the Harborfields Cent. Sch. Dist. of Greenlawn*, 136 F.3d 104, 113–14 (2d Cir. 1998).

[4]The other prerequisite for protection under the ADEA's ERIP safe harbor is that the ERIP be voluntary. 29 U.S.C. § 623(f)(2)(B)(ii). EEOC maintains that MLEA's ERIP is involuntary because any persons who are already over the age of 55 when DOC hires them will be ineligible for the benefits through no volition of their own. This court has not spoken at length on the voluntariness of a given ERIP, aside from stating in *Morgan* that, "[t]o determine whether a retirement plan is voluntary, a court must consider whether, under the circumstances, a reasonable person would have concluded that there was no choice but to accept the offer." 486 F.3d at 1040 (quotation and citation omitted). In light of our conclusion that MLEA's ERIP fails to meet the ADEA's safe-harbor provision because the ERIP is inconsistent with the ADEA's relevant purpose of prohibiting arbitrary age discrimination in employment, we need not address whether the ERIP is voluntary.

MLEA's facially discriminatory ERIP fails to satisfy the ADEA's ERIP safe harbor, the district court correctly concluded that, as a matter of law, MLEA's ERIP violates the ADEA.

### III. *Conclusion*

As the district court recognized, our opinion in *Jankovitz* squarely forecloses MLEA's argument, and, therefore, we affirm the district court's grant of summary judgment.

_____