Raymond E. PAWLOWSKI,
Plaintiff–Appellant,

v.

NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, Defendant–Appellee.

No. 98–4287.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1999.

Decided Aug. 9, 1999.

John J. Jawor (argued), Woodridge, IL, for Plaintiff–Appellant.

James S. Whitehead (argued), Sidley & Austin, Chicago, IL; Ellen K. Emery, Metra, Chicago Regional Transportation Authority, Chicago, IL, for Defendant–Appellee.

Before WOOD, JR., FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Raymond E. Pawlowski, a former railroad police officer, asks us to determine

whether the Railway Labor Act ("RLA" or "Act"), 45 U.S.C. § 151 et seq., entitled him to union representation at an investigative interview conducted by his former employer, the Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra ("Metra"). The district court dismissed Pawlowski's claim, holding that because the RLA conferred no right to representation at initial hearings, and because the RLA appeal process pre-empted consideration of any right that might have been conferred by the applicable collective bargaining agreement ("CBA"), the court had no jurisdiction over this aspect of the claim. We affirm.

## Background

In early 1997, Raymond Pawlowski left his job as a railroad police officer for Amtrak and went to work for Metra in the same capacity. On July 25, 1997, Pawlowski was called into Metra police headquarters and questioned at length by his supervisors about a gun they suspected he had received from another employee and was holding in violation of company regulations. Although Pawlowski requested union or attorney representation during this questioning, Metra supervisors refused to allow either and threatened that if he left the headquarters he would be fired immediately. Pawlowski stayed and answered the questions. On July 28, 1997, Metra sent him a letter announcing his termination, which Pawlowski alleges, was based on statements he made during the interview. Through the Railroad Special Agents & Police Officers Section, Allied Services Division/TCU, AFL–CIO ("Union"), Pawlowski's union and designated collective bargaining representative, Pawlowski appealed the firing to Metra's Manager of Labor Relations, who ultimately upheld the termination decision.

Pawlowski did not pursue his appeal to the National Railroad Adjustment Board ("Adjustment Board"), an entity set up by the RLA to resolve work-related disputes between railroads and their employees.

Instead, he sued Metra for damages and reinstatement, claiming that the denial of his request for union representation during the questioning on July 25, 1997, violated his rights under the RLA. After Metra moved to dismiss the claim pursuant to Fed.R.Civ.P. 12(b)(6), the district court held that, although the RLA provided for representation of an employee's choice during Adjustment Board proceedings, *see* 45 U.S.C. § 153, the statute did not create similar rights for employees at informal proceedings on the employer's property. The court reasoned that if Pawlowski possessed such a right, it sprang from the CBA between Metra and the Union, not the RLA itself. Because the interpretation of railroad CBAs is within the exclusive jurisdiction of the Adjustment Board, *see* 45 U.S.C. § 153, the court concluded that it would have no jurisdiction over this aspect of Pawlowski's claim. *See Andrews v. Louisville & N.R.R.*, 406 U.S. 320, 322, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) (where the source of railroad employee's claimed right not to be discharged was a provision in CBA, employee who had not pursued his administrative remedies under RLA could not bring court action against railroad); *Glover v. St. Louis–San Francisco Ry.*, 393 U.S. 324, 328, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).

## Discussion

▐▌ On appeal, Pawlowski argues that the district court construed the representational rights conferred by the RLA too narrowly in dismissing his claim. We review dismissal under Rule 12(b)(6) de novo, keeping in mind that such a grant is appropriate only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993); *see also Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Medical School*, 167 F.3d 1170, 1173 (7th Cir.1999) (in reviewing 12(b)(6) decision we assume all well-pleaded facts as true,

looking at them in a light most favorable to the plaintiff). If the statute under which the plaintiff sued provides no relief in the circumstances alleged, the district court's decision was appropriate. Therefore, the sole issue on appeal is whether the RLA affords a railroad employee the statutory right to union representation during initial investigative questioning by the employer concerning a possible violation of company regulations.[1]

To answer this question, some understanding of the RLA's structure is required. Congress enacted the statute in 1926 to provide an administrative framework for the peaceful resolution of labor disputes in the railroad industry. *See Kulavic v. Chicago & Illinois Midland Railway Co.*, 1 F.3d 507, 512 (7th Cir.1993). Under the Act, disputes are categorized as either major or minor depending on the subject matter. *See Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 722, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945) (*"Burley I"*). Major disputes involve the formation or alteration of collective bargaining agreements, while minor disputes concern grievances arising from, or covered by, existing agreements. *Id.*; *see Kulavic*, 1 F.3d at 512 (defining minor disputes as "grievances that arise daily between employers and carriers regarding rates of pay, rules, and working conditions").[2] The RLA contains distinct procedural avenues for the resolution of each type of dispute. Because the subject of Pawlowski's claim cannot be categorized as major, we focus only on the framework relevant to minor disputes.

Parties can appeal unresolved minor disputes to the Adjustment Board for binding arbitration. *See Kulavic*, 1 F.3d at 512. Section 153 First describes the Adjust-

ment Board review process and specifies that employees are entitled to the representation of their choice at Board proceedings. *See* 45 U.S.C. § 153 First (j). Prior to appeal, however, the RLA does not prescribe any specific procedures for dealing with disputes at the company level. Instead, Section 153 First (j) states:

> The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions, . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes[.]

45 U.S.C. § 153 First (i). The "usual manner" has been interpreted to mean that minor disputes are handled at the company level according to procedures established by the railroad and the union through the CBA rather than by the RLA. *See Kulavic*, 1 F.3d at 513; *Edwards v. St. Louis–San Francisco Railroad Co.*, 361 F.2d 946, 953 (7th Cir.1966); *Broady v. Illinois Cent. R. Co.*, 191 F.2d 73, 77 (7th Cir.1951); *see also Landers v. National Railroad Passenger Corp.*, 814 F.2d 41, 44 (1st Cir.1987) (*aff'd*, 485 U.S. 652, 108 S.Ct. 1440, 99 L.Ed.2d 745 (1988)) ("In investigations, conferences or hearings by or before officers of the carrier an existing legal contract [CBA] controls, whereas the procedure before the Board is controlled by the statute.") (quotation omitted).

In this case, although the CBA between Metra and the Union provided that police officers were entitled to the presence of Union representatives at certain disciplinary hearings, it is not clear whether that

---

1. On appeal Pawlowski depends solely on rights created by the RLA and does not argue that the representational rights he claims were conferred by the CBA. Because we need not interpret the terms of the CBA, but can confine our inquiry to the statute itself, we have jurisdiction under 28 U.S.C. § 1337. *See Graf v. Elgin, Joliet and Eastern Ry. Company*, 697 F.2d 771, 774 (7th Cir.1983).

2. Although minor disputes generally involve the interpretation of an existing agreement, they can also include claims not specifically covered by those agreements, such as claims for personal injury. *See Burley I*, 325 U.S. at 723, 65 S.Ct. 1282.

right extends to initial investigative questioning. Also, it applies only to officers who have been with the railroad for over a year but says nothing about the representational rights of employees like Pawlowski, who had been with the company for less than a year when he was fired.

■ Pawlowski maintains that the RLA itself, not the CBA, guaranteed him the representational rights he seeks to vindicate, and he points to the language of § 152 Second for support. That provision states:

> All disputes between a carrier or carriers and its employees shall be considered, and, if possible, decided with all expedition, in conference between the representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.

45 U.S.C. § 152 Second.[3] Pawlowski asserts that this language clearly establishes that employees are entitled to union representation ("representatives designated") whenever they are in conflict with the railroad ("all disputes"). He insists that this necessarily includes the procedural right to the presence of the Union during Metra's questioning about a potential work rule violation. That the CBA does not also provide him with such a right is irrelevant, he concludes, because the terms of a CBA

may not deprive railroad employees of their statutory rights. *See Burley I*, 325 U.S. at 740 n. 39, 65 S.Ct. 1282 ("[T]he individual employees's [statutory] rights cannot be nullified merely by agreement between the carrier and the union.").

Pawlowski concedes that he was represented by the Union when he challenged the termination decision, and that Metra considered—but ultimately denied—his request to have it overturned. We also note that although Pawlowski chose not to appeal Metra's decision to the Adjustment Board, he has alleged nothing that suggests he would not have received his full representational rights before the Board. *See* 45 U.S.C. § 153 First(j). Instead, Pawlowski's claim is that his right to representation under § 152 Second arose immediately upon being called into Metra headquarters for questioning; that the right was violated when the railroad refused to suspend the questioning or allow him to call the Union; and that the RLA affords him a statutory remedy for this procedural violation.

■ While § 152 Second may well guarantee some right to union representation in dispute resolution conferences at the company level, *see McElroy v. Terminal Railroad Assoc.*, 392 F.2d 966, 969 (7th Cir.1968),[4] we reject Pawlowski's argu-

---

**3.** Pawlowski also insists that Sections 153 Third and Fourth afforded him the right to union representation during the July 25th questioning. However, these provisions relate to railroad employees' right to select a collective bargaining representative (Third) and join a collective bargaining unit (Fourth) without interference from the employer. *See Herring v. Delta Air Lines*, 894 F.2d 1020, 1022–23 (9th Cir.1990). Pawlowski has pointed to no authority suggesting that either section provides for the kind of representational rights he claims. Because neither Pawlowski's right to join the Union nor his right to select it as his collective bargaining representative is at issue here, we need not address those provisions and may instead concentrate on Pawlowski's argument relating to § 152 Second.

**4.** In *McElroy* we held that railroad employees who had obtained seniority status as both

firemen and as engineers, but who were members of the firemen's union only, had the right to be represented in minor disputes by the firemen's union despite the fact that the engineer's union was their designated collective bargaining representative. 392 F.2d at 971. Among the reasons supporting that decision was our observation that, "on its face, [§ 152 Second] guarantees an individual employee the right to prosecute his grievances through any representative of his choice." *Id.* at 969. We note that the continued validity of the precise holding of *McElroy* is in doubt after the Supreme Court's decision in *Landers v. National Railroad Passengers Co.*, 485 U.S. 652, 108 S.Ct. 1440, 99 L.Ed.2d 745 (1988), which held that § 152 did not establish a right to minority union representation in company-level grievance and disciplinary proceedings. *Id.* at 656, 108 S.Ct. 1440. However, nothing in *Landers* indicates that

ment. To accept it would essentially mandate a particular statutory procedure whenever an employee had a disagreement with the railroad. This runs counter to the long line of cases from this and other courts holding that the RLA does not alter an employer's ability to investigate, discipline or discharge a railroad employee, nor does it dictate any specific statutory procedures that must be followed at the company level. As this court has stated:

> The provisions of the Railway Labor Act govern neither the procedure by which a carrier may discharge its employees nor the conduct of an investigation hearing on railroad property.
>
> \* \* \*
>
> [T]he [provisions of the] statute make it quite evident that "the Railway Labor Act does not empower the courts to enforce against the railroad any prescribed procedure for investigating and discharging its employees"

*Edwards*, 361 F.2d at 953 (quoting *Brooks v. Chicago R.I. & P.R. Co.*, 177 F.2d 385, 391 (8th Cir.1949)); *see Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515, 559, 57 S.Ct. 592, 81 L.Ed. 789 (1937) ("The provisions of the Railway Labor Act ... do not interfere with the normal exercise of the right of the carrier to select its employees or to discharge them.") (quotation omitted); *Broady*, 191 F.2d at 77 (same); *see also Kulavic*, 1 F.3d at 513 ("CBAs are not required to contain a standard set of guarantees for investigative hearings.").

The notion that the RLA does not dictate specific procedures at the company level necessarily applies to § 152 Second. *See Landers v. National Railroad Passenger Co.*, 814 F.2d 41, 44 (1st Cir.1987), *aff'd*, 485 U.S. 652, 108 S.Ct. 1440, 99 L.Ed.2d 745 (1988). As the First Circuit observed in one of the few cases dealing directly with representational rights under § 152 Second:

> Section 152 Second spells out the overall duties of carriers, employees, and labor unions. It comprises a broadly general reference to the many kinds of controversies that might arise, not to specific procedures or to particular rights in dispute resolution between parties. As the Supreme Court declared, the statute "merely states the policy which ... other provisions buttress with more particularized commands."

*Landers*, 814 F.2d at 44 (quoting *General Comm. of Adjustment of the Bhd. of Locomotive Engineers of the Mo.-Kan.-Tex. R.R. v. Missouri-Kan.-Tex.R.R.*, 320 U.S. 323, 334, 64 S.Ct. 146, 88 L.Ed. 76 (1943)).[5]

 We read § 152 Second as imposing only a general duty on railroads to afford their employees the opportunity to meet and discuss their grievances through a union representative. *See Edwards*, 361 F.2d at 953.[6] Yet railroads and unions remain free to establish by agreement the procedures for investigative and disciplinary proceedings at the company level. *See Landers*, 814 F.2d at 44. The parties may choose to provide railroad employees with more extensive representational rights during those proceedings, *see Kulavic*, 1 F.3d at 515, but so long as the right to

§ 152 does not guarantee any right to majority union representation for the resolution of disputes.

**5.** As the district court observed, the holding in *Landers* (later affirmed by the Supreme Court, *see* 485 U.S. 652, 108 S.Ct. 1440, 99 L.Ed.2d 745 (1988)), is not directly applicable to Pawlowski's claim for majority union representation because it dealt with an employee's right to be represented by a minority union. 814 F.2d at 44. Yet that court's observations about the role of § 152 Second are relevant to

our determination that that provision does not prescribe specific procedures for company-level proceedings.

**6.** We emphasize that we are discussing only the minimum statutory rights conferred by Section 152 Second. Parties covered by the RLA are obviously free to bargain for more extensive representational rights in their CBA—something Metra and the Union apparently chose not to do, at least with respect to employees in Pawlowski's position.

confer over disputes arising from them is preserved, the RLA is not offended.

■ Our conclusion is supported by § 152 Sixth, even though it appears at first blush to mandate a specific statutory procedure for triggering the right to conference through a representative discussed in § 152 Second.[7] Section 152 Sixth states that when a dispute arises over a grievance or work-related complaint, the employer has a duty to meet in conference with the complaining employee's representative within ten days of receiving notice of the employee's desire to confer, and the time and place of the proposed conference. However, § 152 Sixth goes on to state that where a CBA is in place, none of these statutory procedures should be read to supersede those established by agreement for handling disputes at the company level. *Id.* This reference to the CBA-created dispute and grievance mechanisms reinforces our conclusion that they, rather than the RLA, establish the procedures by which the right to representation arises. It also indicates that where such an agreement is in place, the invocation of that agreement's grievance procedure is a necessary prerequisite to any statutory right to a conference with union representation under § 152 Second. *Id. See Kulavic*, 1 F.3d at 513; *Edwards*, 361 F.2d at 953, *Landers*, 814 F.2d at 44.

In this case, however, Pawlowski had not invoked any grievance procedure prior to the July 25th questioning. He appears to confuse Metra's investigative interview

with a § 152 Second conference when he argues that, because he was denied representation at the questioning, the rights conferred by statute were violated. Yet this puts the cart before the horse. Pawlowski's dispute arose out of the interview; the interview was not a hearing about his dispute. Thus whatever statutory right to representation he possessed had not yet been triggered, because he had not yet invoked the grievance procedures in the CBA. *See Kotakis v. Elgin, Joliet & Eastern Ry. Co.*, 520 F.2d 570, 575 (7th Cir. 1975) (contractual right to representation not triggered prior to plaintiff's invocation of formal grievance machinery under CBA).

A dispute within the meaning of § 152 Second arose for Pawlowski only after Metra informed him that he was being terminated for having violated company rules and he filed a grievance (in the form of an appeal) with respect to that disciplinary action.[8] As noted above, Pawlowski was represented by the Union in his attempt to have it reversed. But while the RLA guaranteed Pawlowski that much representation, it did not by itself entitle him to more. Because Pawlowski was afforded the opportunity to confer through his Union over the dispute which arose from the July 25th questioning, his statutory rights were not violated.

## Conclusion

We agree with the district court's decision that Pawlowski has failed to state a

---

7. Section 152 Sixth states in relevant part:

 In case of a dispute between a carrier or carriers and its or their employees, arising out of grievances or out of the interpretation of or application of agreements concerning rates of pay, rules, or working conditions, it shall be the duty of the designated representative or representatives of such carrier or carriers and of such employees, within ten days after the receipt of notice of a desire on the part of either party to confer in respect to such dispute, to specify a time and place at which such conference shall be held: ... *And further provided*, That nothing in this chapter shall be construed to super-

sede the provisions of any agreement (as to conferences) then in effect between the parties.

45 U.S.C. § 152 Second (emphasis in original).

8. Alternatively, a dispute would have arisen had Pawlowski filed a grievance with Metra through the Union complaining that he was denied representation during the questioning in violation of the CBA. At that point, he may have had the statutory right to confer with Metra through the Union over this question. However, Pawlowski did not pursue this approach.

claim for relief under the RLA. Assuming the truth of his allegations, Metra's initial investigatory tactics appear heavy-handed, and may have violated the spirit, if not the terms, of the CBA. Yet Pawlowski did not appeal his employer's action to the Adjustment Board and he does not base his claim before us on his contractual rights. We conclude that because Metra conferred with the Union over Pawlowski's grievance once it was properly presented, and left open to the plaintiff the option of appealing the decision to the Adjustment Board, it fulfilled its statutory obligations under the RLA. We therefore AFFIRM the district court's decision.