In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3204

T.V. Ryan, et al.,

Plaintiffs-Appellants,

v.

Union Pacific Railroad Company and
UNITED TRANSPORTATION Union,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 7549--Ronald A. Guzman, Judge.

Argued February 25, 2002--Decided April 11, 2002


   Before Posner, Easterbrook, and Williams,
Circuit Judges.

   Posner, Circuit Judge.  Five members of
the Brotherhood of Locomotive Engineers
who are employed by the Union Pacific
Railroad as trainmen brought suit against
the Union Pacific and the trainmen's
union, United Transportation Union. They
sought a declaration that they are
entitled to be represented in grievance
proceedings by their union, the BLE,
rather than by the UTU, even though the
collective bargaining agreement between
the Union Pacific and the UTU appoints
the latter as the trainmen's exclusive
representative in grievance proceedings.
The district court dismissed the suit for
want of subject-matter jurisdiction.

   The Railway Labor Act establishes a
system of compulsory arbitration of
disputes arising out of collective
bargaining agreements in the railroad
industry. The first stage of dispute
resolution consists of grievance
proceedings "on the property," that is,
within the railroad itself, before
committees composed of union and
management representatives. 45 U.S.C.
sec. 153 First (i); International Ass'n
of Machinists, AFL-CIO v. Central
Airlines, Inc., 372 U.S. 682, 688-89
(1963); Kulavic v. Chicago & Illinois
Midland Ry., 1 F.3d 507, 515 (7th Cir.

1993). If the dispute cannot be resolved at that level, the case proceeds to formal arbitration, either before a Public Law Board or a National Adjustment Board, but it is only the first stage that concerns us here. The Act provides that at this stage the dispute "shall be handled in the usual manner." 45 U.S.C. sec. 153 First (i). The meaning of the quoted language is the only issue in this appeal.

We need to paint in some background. It used to be that engineers were represented by the BLE and other railroad workers (collectively, trainmen) by the UTU. But as the industry shrank, jobs were consolidated and engineers often found themselves working as trainmen, and vice versa. Nevertheless the unions did not merge. Instead workers were allowed to elect which union to join. So even though the BLE was the engineers' union and the UTU the trainmen's union, an engineer assigned as a trainman couldcontinue to belong to the BLE; and by virtue of a 1951 amendment to the Act, he didn't have to pay dues to the UTU even though the UTU was his collective bargaining representative while he was doing trainman's work. And likewise a trainman assigned as an engineer could continue to belong to the UTU and did not have to pay dues to the BLE. Landers v. National R.R. Passenger Corp., 485 U.S. 652, 657-58 (1988); Pennsylvania R.R. v. Rychlik, 352 U.S. 480, 489-92 (1957); Corzine v. Brotherhood of Locomotive Engineers, 147 F.3d 651, 653-54 (7th Cir. 1998); Brotherhood of Locomotive Engineers v. Kansas City Southern Ry., 26 F.3d 787, 790 (8th Cir. 1994). This structure remains in effect, and so both unions have collective bargaining agreements with the Union Pacific.

A provision added to the UTU's collective bargaining agreement with the Union Pacific in 1978 designated that union the exclusive representative of all Union Pacific trainmen in grievance proceedings "on the property" even though some of these trainmen, such as our five plaintiffs, belong to the BLE. We do not know whether the BLE's collective bargaining agreement with the railroad contains a parallel provision with respect to engineers who may happen to belong to the UTU.

Despite the exclusivity provision, there were occasions between 1989 and 2000 on which, apparently without objection by the UTU or the railroad, the BLE was permitted to represent its trainmen members in the first-stage ("on the property") grievance proceedings against the railroad. But in the latter year the UTU announced that this would no longer be permitted--that it was standing on the terms of the collective bargaining agreement. That announcement precipitated this suit, in which the plaintiffs argue that their representation by the BLE is "the usual manner" in which first-stage grievances are handled and so cannot be changed by the UTU and the railroad.

The most natural and sensible reading of the statutory term "in the usual manner" contrasts it with the provision governing the second, the arbitral, stage of resolving disputes over the meaning or interpretation of the collective bargaining agreement. The procedures for that stage are set forth in the statute; the anterior proceeding, the proceeding on the property, is to be conducted in the usual manner, that is, in the manner agreed upon by the railroad and the union. That stage is for them to design as well as to administer. So read, in accordance with such decisions as Pawlowski v. Northeast Illinois Regional Commuter R.R., 186 F.3d 997, 1000 (7th Cir. 1999); Kulavic v. Chicago & Illinois Midland Ry., supra, 1 F.3d at 515, and Landers v. National R.R. Passenger Corp., 814 F.2d 41, 46-47 (1st Cir. 1987), aff'd, 485 U.S. 652 (1988), the "usual manner" provision allows the railroad and the union to prescribe in the collective bargaining agreement the manner in which grievance proceedings shall be conducted on the property, as the Union Pacific and the UTU did in 1978. For in a unionized workplace it is in the collective bargaining agreement that one finds the provisions creating the grievance procedures.

The plaintiffs argue that "usual manner" should be read to grandfather any practice that has emerged in the conduct of grievance proceedings on the property. If between 1989 and 2000 it was usual to give a trainman who belonged to the BLE a choice between a BLE griever and a UTU griever, that practice is now cemented in and can never be changed. No reason is

given for such a weird result, which would give an arbitrary subset of the railroad's employees a choice between two unions' grievers--and could the employee insist on both? (At argument the plaintiffs' lawyer was reluctant to commit himself on that question.) Even the benefit to the BLE is obscure, since the handling of its trainman members' grievances by the UTU is at the UTU's expense. But probably the BLE is worried that members pleased with the UTU's handling of their grievances might be minded to jump ship and join the UTU.

The plaintiffs rest their argument on a Supreme Court footnote that reads in its entirety as follows: "Of course, an employee may be entitled to be heard through the representative of his choice at company-level grievance and disciplinary proceedings if that has become the 'usual manner' of handling disputes at his workplace." Landers v. National R.R. Passenger Corp., 485 U.S. 652, 657 n. 4 (1988). That just repeats what the statute says; it does not tell us how to decide what is the "usual manner." The issue in Landers was whether the Railway Labor Act entitled a member of a railroad union that was not the member's bargaining representative nevertheless to represent him in grievance proceedings on the property, and the Court held that there was no such statutory right. This is entirely consistent with the proposition, nowhere questioned in the opinion, that a collective bargaining agreement designating a railroad union as the exclusive representative in grievance proceedings takes precedence over an informal custom inconsistent with that designation. The decision the Supreme Court was affirming had asserted that very proposition: "Where, as here, a collective bargaining agreement is in place, representation rights must be based upon, and may be limited by, that pact." 814 F.2d at 47.

We did, it is true, many years ago flirt with the position urged by the plaintiffs here. See McElroy v. Terminal R.R. Ass'n, 392 F.2d 966, 971 (7th Cir. 1968). That decision long predated both the First Circuit's decision in Landers and the Supreme Court's decision in that case. And in Pawlowski v. Northeast Illinois Regional Commuter R.R., supra, 186 F.3d

at 1101 n. 4, we remarked that "the continued validity of the precise holding of McElroy is in doubt after the Supreme Court's decision in Landers." That is an understatement; the holding cannot survive Landers.

Should it make a difference that the railroad and the UTU did not enforce the exclusivity provision for some years after it was inserted into their collective bargaining agreement? We cannot see why. The failure to enforce a contractual term does not abrogate the term unless the conditions for a waiver or estoppel are established, and the plaintiffs have made no effort to do that. Anyway they are not arguing that the agreement was modified or that it should be interpreted to authorize a practice that had become customary though it was contrary to the language of the agreement; they can't argue that to us, as we're about to see.

It remains only to decide whether the district judge was right to dismiss the suit on jurisdictional grounds rather than on the merits. His reasoning was that since the plaintiffs have no statutory ground for using BLE grievers, they must be seeking an interpretation of the collective bargaining agreement as permitting them to use those grievers. Not so. They may be, in fact they are, suing for a declaration that the statute overrides the agreement and entitles them to use BLE grievers. Their interpretation of the statute is wrong; the statute confers no such right on them. But that conclusion is a determination of the merits of their claim. It has nothing to do with jurisdiction. The federal courts have jurisdiction to interpret the Railway Labor Act, Pawlowski v. Northeast Illinois Regional Commuter R.R., supra, 186 F.3d at 1000 n. 1; Taylor v. Missouri Pacific R.R., 794 F.2d 1082, 1085 (5th Cir. 1986), abrogated on other grounds, Landers v. National R.R. Passenger Corp., 485 U.S. 652 (1988); they lack jurisdiction only to interpret collective bargaining agreements made under the authority of the Act. Pawlowski v. Northeast Illinois Regional Commuter R.R., supra, 186 F.3d at 1000 n. 1; Roberts v. Lehigh & New England Ry., 323 F.2d 219, 222 (3d Cir. 1963). It was not, to repeat, an interpretation of the collective bargaining agreement, but an

interpretation of the Railway Labor Act, that these plaintiffs were seeking from the district court.

We add for completeness that if there were no collective bargaining agreement in force, or no provision in the agreement relating to grievance proceedings on the property, the plaintiffs would be free to argue to the district court that the "usual manner" of handling such grievances was whatever practice the parties had followed. Or if the plaintiffs thought the collective bargaining agreement properly interpreted made that practice the "usual manner," they could argue that in the arbitral process. What they cannot do is appeal to the statute to supersede the "usual manner" as determined by the collective bargaining agreement.

The judgment of the district court is modified to place decision on the merits, and as thus modified is

Affirmed.