In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3415

BROTHERHOOD OF MAINTENANCE OF
WAY EMPLOYEES DIVISION/IBT,

*Plaintiff-Appellant,*

*v.*

NORFOLK SOUTHERN RAILWAY
COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 7425 — **Virginia M. Kendall**, *Judge.*

ARGUED OCTOBER 31, 2013 — DECIDED MARCH 11, 2014

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* The Brotherhood of Maintenance Way
Employees ("the Brotherhood") filed for a permanent injunc-
tion to ban Norfolk Southern Railway Company's ("Norfolk")
use of accident reconstruction reports in employee disciplinary
investigations unless Norfolk adheres to additional pre-hearing
procedures. The United States District Court for the Northern

District of Illinois found that it lacked jurisdiction to grant the Brotherhood's request and dismissed the action. The Brotherhood appealed.

## I. BACKGROUND

The Brotherhood represents members of the maintenance-of-way craft employed by Norfolk. Maintenance-of-way members work to ensure that railways remain clear, safe, and navigable. This lawsuit arose after Norfolk fired four of its employees, all Brotherhood members, because they made false statements about injuries they suffered while on duty. The parties' collective bargaining agreements entitle the Brotherhood members to an investigation before Norfolk takes any disciplinary action. The Brotherhood and Norfolk dispute what evidentiary rules and pre-hearing procedures are required in those investigations. Their collective bargaining agreements and the Railway Labor Act govern the disciplinary process. In this case, the Brotherhood does not seek to overturn any prior disciplinary actions, only to impose new procedures that it believes will rectify problems in the Norfolk disciplinary proceedings.

### A. The Collective Bargaining Agreements

In 2001, the Brotherhood and Norfolk amended their existing collective bargaining agreements. This amendment, called the System Discipline Rule ("Discipline Rule"), outlines the procedures Norfolk must follow when disciplining the Brotherhood members. The Discipline Rule does not allow Norfolk to discipline, dismiss, or place an unfavorable mark on an employee's record without first conducting a "fair and impartial investigation."

Pursuant to the Discipline Rule, Norfolk must provide written notice describing the precise charge to the employee and the Brotherhood at least ten days before the disciplinary hearing. The parties refer to the disciplinary hearing as an "investigation." At the investigation, either the employee or Norfolk can call witnesses to testify. An employee is entitled to the assistance of authorized representatives throughout the process. The Discipline Rule does not require an external investigator to conduct the investigation; typically a single Norfolk-appointed officer conducts them.

After the investigation, the hearing officer determines whether the employee should be dismissed. An employee has the right to appeal the results of the investigation to a higher officer at Norfolk. If an employee remains unsatisfied, he or she may petition the Special Board of Adjustment ("SBA")[1] for a final adjudication on the matter.

### B. The Railway Labor Act

The Railway Labor Act ("RLA") governs labor disputes between employees, employers, and labor unions. 45 U.S.C. § 151. The courts divide the disputes into two classes: "major" and "minor." 45 U.S.C. § 152 ¶¶ Sixth, Seventh; *Elgin J. & E. Ry. v. Burley*, 325 U.S. 711, 722–23 (1945); *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302 (1989). In a major dispute, a union and a railway seek to change the terms of their

---

[1] The parties created the SBA by agreement, but the Discipline Rule permits either party to appeal instead to the National Railroad Adjustment Board, Public Law Board, or other Special Board of Adjustment formed by the Railroad Labor Act.

collective bargaining agreements. 45 U.S.C. § 152 ¶ Seventh; *Consolidated*, 491 U.S. at 302. To do so, the parties must enter into an extensive negotiation and mediation process. 45 U.S.C. §§ 155, 156; *Consolidated*, 491 U.S. at 302.

Minor disputes, on the other hand, are those "arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 152 ¶ Sixth; *Consolidated*, 491 U.S. at 303. When minor disputes occur, the parties must handle the dispute in "the usual manner" and may petition for arbitration before a RLA Adjustment Board. 45 U.S.C. § 153 ¶ First (i); *Ryan v. Union Pac. R.R. Co.*, 286 F.3d 456, 457 (7th Cir. 2002) (the usual manner of the parties was prescribed by the terms of their collective bargaining agreement). Adjustment Board awards are final and binding upon both parties, 45 U.S.C. § 153 ¶ First (m), and subject to "one of the most deferential standards of judicial review in all of federal law," *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 719 F.3d 801, 803 (7th Cir. 2013).

*Sub judice*, the parties followed the procedures typical of a minor dispute. As prescribed by the Discipline Rule, investigations were held in all four disciplinary actions. As prescribed by the Discipline Rule and 45 U.S.C. § 153 ¶ First (i), the Brotherhood then appealed Norfolk's decision to terminate each of its members and petitioned for review before a RLA Adjustment Board.

### C. The Disciplinary Actions

Norfolk fired four employees after investigation hearing officers concluded that each employee made false statements related to their claims of on-duty injuries.[2] In each investigation, Norfolk submitted an accident reconstruction report by Richard T. Hughes, P.E. ("Hughes"), a consulting engineer. Hughes reenacted each accident, and in each case, he concluded that it was unlikely that the injuries sustained by the employees occurred as they described. Hughes never testified at any of the investigations, yet his reports were submitted as evidence. Norfolk never provided notice to the accused employees that it would rely on an expert report in their investigations. Norfolk's use of Hughes' reports at the disciplinary investigations is the heart of this dispute.

We highlight the disciplinary proceeding of Steven Kawa ("Kawa") because it adequately represents the alleged harm that has befallen each of the Brotherhood members. Kawa claimed he suffered cervical injuries when he drove a truck over a bump in the road at 55 miles per hour. Kawa was jostled and said he hit his head on the ceiling of the truck cab. Kawa drove for another 25 to 30 miles before he asked a co-worker to drive due to pain in his neck. Kawa went to a hospital that same day and was examined. Not one of the other three

---

[2] Norfolk fired Allen Gibson after his investigation on January 29, 2009, Steven Kawa after his investigation on July 31, 2009, and William Orr and Donald Glista after a joint investigation on May 10, 2010. Norfolk conducted a joint hearing for Orr and Glista because they both reported an injury arising from the same incident.

employees who rode in the truck saw Kawa hit his head or reported any injuries of their own.

After the incident, Norfolk documented Kawa's description of the event in a personal injury report. A Norfolk manager was skeptical of Kawa's injury because Kawa had previously asked for an extended leave of absence. The Norfolk manager reenacted the incident twice in the same truck, at the same speed, and in the same location. The manager was thrown upward by the bump, but he did not hit his head on the ceiling. The manager then hired Hughes to verify the results of the manager's tests. Hughes used the same data as the manager and concluded that it was an "extremely remote" chance that the bump in the road caused Kawa's injury. Subsequently, Norfolk notified Kawa to appear for an investigation regarding any false statements he may have made about his injury.

At the investigation, the manager testified and presented a document detailing his reenactment of the incident. Without disclosing it to Kawa prior to the investigation, the manager read Hughes' report into the record and introduced it as evidence; Hughes did not testify. Kawa's union representative objected to the admission of Hughes' report on the grounds that Hughes was not qualified as an expert and the report's findings were inaccurate. However, neither Kawa nor his union representative objected to the introduction of Hughes' report on the basis that the report was a violation of the Discipline Rule. After the investigation, Norfolk dismissed Kawa from its employment.

The Brotherhood appealed on Kawa's behalf to Norfolk management. The Brotherhood attacked the weight of the

evidence against Kawa, and asserted that "[s]ince Mr. Hughes was not available for the Organization to question at the hearing, I can only assume that [Hughes' report] will not have any bearing on the outcome of this investigation." Again, the Brotherhood did not argue that Norfolk's submission of Hughes' report violated the Discipline Rule. Additionally, and for the first time in the proceeding, the Brotherhood introduced an affidavit from Tony Machetta ("Machetta") about the purpose and function of the tether straps installed on the driver's seat of the truck. The Brotherhood did not provide information about Machetta's qualifications as an expert or subject him to cross-examination. Norfolk management confirmed Kawa's dismissal, explaining that the evidence did not support Kawa's appeal.

Next, the Brotherhood requested a hearing before the SBA. The SBA was composed of a Norfolk representative, a Brotherhood representative, and a neutral member. In its petition, the Brotherhood raised many issues about the investigation and argued that the facts did not support Norfolk's termination of Kawa. The Brotherhood still did not object to Norfolk's submission of Hughes' report as a violation of Kawa's right to a fair and impartial investigation under the Discipline Rule. The SBA ruled that substantial evidence supported the conclusion that Kawa made a false statement concerning an on-duty injury and Norfolk's dismissal of Kawa was warranted.

The Brotherhood then filed a complaint in federal district court seeking to overturn the SBA award that confirmed Kawa's dismissal. The Brotherhood's efforts to vacate the award proved fruitless.

In a separate lawsuit filed in district court (the instant matter before us), the Brotherhood requested a permanent injunction. The Brotherhood wants to prevent Norfolk from using Hughes' reports, or any expert-witness testimony, in employee investigations unless Norfolk follows new court-imposed procedures. The Brotherhood requested a court order mandating Norfolk to: (1) disclose expert witnesses to the Brotherhood and accused employees before investigations; (2) provide copies of expert reports to the Brotherhood and accused employees before investigations; (3) present experts for cross-examination at investigations; (4) allow the Brotherhood time to hire its own experts; and (5) qualify experts under the *Daubert* or *Kumho Tire* standards. The district court declined to exercise jurisdiction over this action because the Brotherhood's suit constituted a minor dispute within the exclusive jurisdiction of a RLA Adjustment Board.[3]

On appeal, the Brotherhood seeks reversal of the district court's decision and the opportunity to proceed to trial.

---

[3] We take a quick moment to correct a procedural misstatement at the conclusion of the district court's Memorandum Opinion and Order. The last two sentences read, "The claims of Brotherhood of Maintenance of Way EMPLOYEES Division/IBT must be dismissed for want of jurisdiction. Norfolk Southern Railway Company's Motion of Summary Judgment is therefore granted." The last sentence of the order granting Norfolk's motion should have been omitted because the district court already dismissed the Brotherhood's claims for want of jurisdiction. When "the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2008).

## II. DISCUSSION

This court reviews *de novo* the district court's dismissal of cross-motions for summary judgment. *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

There are two preliminary matters to clarify. First, the Brotherhood failed to develop its argument that Norfolk did not perform its duty under 45 U.S.C. § 152 ¶ First in "good faith" in the district court. Therefore, the Brotherhood waived this argument and we will not consider it on appeal. *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509 (7th Cir. 2013) ("When a party fails to develop an argument in the district court, the argument is waived, and we cannot consider it on appeal."). Second, the district court already ruled that the Brotherhood failed to establish that Hughes' reports were fraudulent. *Brotherhood of Maintenance of Way Employees v. Norfolk Southern Railway Co.*, 903 F. Supp. 2d 583 (N.D. Ill. 2012). The Brotherhood does not challenge that ruling in this appeal and did not introduce any new evidence supporting their theory that Hughes' reports are false and misleading, so we will not revisit this allegation.

The only remaining issue is whether this Court may exercise jurisdiction over this dispute. The Brotherhood argues that this Court has jurisdiction over its lawsuit because its complaint raised a federal question—whether Norfolk violated a provision of a federal statute, 45 U.S.C. § 152 ¶ First.[4] The Brotherhood contends that Norfolk breached its duty to

---

[4] "It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements … ." 45 U.S.C. § 152 ¶ First.

"maintain agreements" by not providing the Brotherhood members a fair and impartial investigation as mandated by the Discipline Rule. Norfolk disagrees and argues that the Discipline Rule justified its use of Hughes' reports. Therefore, Norfolk argues that this matter is subject to the exclusive jurisdiction of the RLA arbitrators, pursuant to 45 U.S.C. § 153, and cannot be reached by the federal courts.

When the parties disagree about the appropriate classification of a dispute, the party seeking to establish that a dispute is minor and under the exclusive arbitral jurisdiction of a RLA Adjustment Board faces a "relatively light burden." *Consolidated*, 491 U.S. at 307; *Brotherhood of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees v. Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d 403, 406 (7th Cir. 1988). To be considered minor, an employer's action only needs to be "arguably justified" by a contractual right under the terms of the collective bargaining agreement. *Consolidated*, 491 U.S. at 307. An employer's contractual claim may rely upon implied contractual terms, which the parties established through past practices. *Consolidated*, 491 U.S. at 312; *Atchison*, 847 F.2d at 406. Only if the employer's assertion of a contractual right is "frivolous or obviously insubstantial" will the court construe the dispute as major, and have jurisdiction to hear the case on its merits. *Consolidated*, 491 U.S. at 307.

*Consolidated* is the seminal case which set the standard to determine whether railway labor disputes are major or minor. *Id*. at 301. In *Consolidated,* a union contested a railroad's decision to test employees for drugs during all periodic and return-from-leave physical examinations, instead of only testing occasionally. *Id*. at 300. The collective bargaining

agreement was not in the record and neither party relied upon an express provision of the contract to support their contentions. *Id*. at 311. Instead, the Court looked to the past practices between the parties and found that "[d]rug testing always had some place in [the railroad's] physical examination, although its role changed with time." *Id*. at 313. The union argued that the railroad materially departed from the terms of the parties' agreement when it increased the frequency of drug testing, but the Court disagreed. *Id*. at 316. It held that the case constituted a minor dispute that was within the exclusive jurisdiction of any Board formed under the RLA. *Id*. at 320.

Applying the *Consolidated* standard to the instant case, we agree with the district court's ruling that this dispute is minor. The Discipline Rule requires Norfolk to provide the Brotherhood members with a fair and impartial investigation, but it does not provide extensive procedural requirements or evidentiary rules on how to meet that requirement. The only portion of the Discipline Rule which remotely discusses the presentation of evidence at investigations is paragraph (f), which states that "[p]ertinent witnesses called by the carrier [or employee] to testify in disciplinary investigations will be compensated." The Discipline Rule does not explicitly address pre-investigation disclosures, the admissibility of hearsay testimony, or the role of expert witnesses.

The Brotherhood's conduct in Kawa's case illustrates the implied terms of the Discipline Rule. The Brotherhood submitted Machetta's affidavit after the initial investigation, but did not qualify Machetta as an expert or make him available for cross-examination. The Discipline Rule did not contain an express provision permitting the Brotherhood's action, but the

Brotherhood submitted the affidavit anyway. Both parties enjoyed latitude to introduce testimony and evidence in the four recent disciplinary proceedings.

Norfolk also produced evidence from previous disciplinary actions in which the Brotherhood introduced expert testimony without offering the expert for cross-examination. In three investigations regarding the termination of employees who tested positive for marijuana, the Brotherhood submitted sworn statements from Dr. Klawans on behalf of its members. Though Dr. Klawans was never subject to cross-examination, the Adjustment Board considered his reports.[5] The use of hearsay reports by lay persons and experts has played a consistent role in the disciplinary hearings of the Brotherhood members. Based on the parties' past practices, Norfolk's use of Hughes' reports in the investigations was arguably justified by the implied contractual terms of the parties' collective bargaining agreements.

The Brotherhood attempts to use 45 U.S.C. § 152 ¶ First as a vehicle to establish this Court's jurisdiction, and relies on *CNW* and *Ryan* for support. *Chicago & N. W. Ry. Co. v. United Transp. Union*, 402 U.S. 570 (1971); *Ryan*, 286 F.3d 456. Neither case, however, provides a sound rationale for extending jurisdiction in this case.

---

[5] These investigations are not conclusive of what contract terms were implied in this case, because these disciplinary actions occurred in the 1980s, long before the Discipline Rule existed. However, these examples deflate the Brotherhood's contention that its members have fallen victim to Norfolk's unilateral misconduct.

The *CNW* Court held that a federal court could exercise jurisdiction and issue the railroad's request to enjoin the union from holding a labor strike. 402 U.S. at 584. In that case, however, the railroad filed suit after it exhausted the formal procedures mandated for a major dispute under 45 U.S.C. § 155 ¶ First. *Id.* at 573. The Court recognized that the dispute in *CNW* was a unique scenario and warned that "the vagueness of the obligations under § 2 First [45 U.S.C. § 152 ¶ First] could provide a cover for freewheeling judicial interference in labor relations." *Id.* at 583. Federal courts should only issue injunctions when it is the only practical remedy capable of enforcing the unions' and railroads' duty to make and maintain agreements. *Id.*

In this case, other practical remedies are available to the Brotherhood. It can renegotiate the terms of its collective bargaining agreement with Norfolk under the formal procedures required by 45 U.S.C. § 155 ¶ First. Or, it can seek an interpretation of the Discipline Rule before a RLA Adjustment Board. 45 U.S.C. § 153 ¶ First (i). Furthermore, policy reasons lead us to decline jurisdiction because "[r]eferring arbitrable matters to the Board will help to 'maintain agreements,' by assuring that collective-bargaining contracts are enforced by arbitrators who are experts in 'the common law of [the] particular industry.'" *Consolidated*, 491 U.S. at 310 (citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579 (1960)).

This case is also distinguishable from *Ryan*. The *Ryan* court held that it had jurisdiction and decided the case on the merits. *Ryan*, 286 F.3d at 460. In *Ryan*, five trainmen sought a declaration that they were entitled to representation in grievance

proceedings by their union, the Brotherhood of Locomotive Engineers, instead of the United Transportation Union, which traditionally represented them. *Id.* at 457. The only issue before the court was how to interpret 45 U.S.C. § 153 ¶ First (i), specifically the phrase "shall be handled in the usual manner." *Id.* at 458. The court repeated that its decision "was not … an interpretation of the collective bargaining agreement, but an interpretation of the Railway Labor Act." *Id.* at 460. In contrast, the Brotherhood is not asking us to interpret a federal statute but to interpret its collective bargaining agreement—what constitutes a "fair and impartial hearing"—a function exclusively reserved for a RLA Adjustment Board.

## III.  CONCLUSION

This dispute grew out of the application of the parties' collective bargaining agreement in employee disciplinary actions. Norfolk met its burden of proving that its use of Hughes' reports at investigations was justified by a contractual right, albeit an implied one. Therefore, we agree with the district court that the Brotherhood's suit is a "quintessential" minor dispute and "find no basis for asserting jurisdiction over the subject matter of this dispute," *Atchison*, 847 F.2d at 412. The district court's decision is AFFIRMED.