# United States Court of Appeals
### For the Eighth Circuit

———————————————————

No. 23-3731

———————————————————

Brotherhood of Maintenance of Way Employees

*Plaintiff - Appellant*

v.

BNSF Railway Company

*Defendant - Appellee*

————————————

Appeal from United States District Court
for the District of Nebraska - Omaha

————————————

Submitted: May 13, 2025
Filed: July 21, 2025

————————————

Before COLLOTON, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

————————————

SHEPHERD, Circuit Judge.

The Brotherhood of Maintenance of Way Employees (BMWE), the union representing BNSF Railway Company employees tasked with maintaining the railway's track, initiated this action against BNSF, alleging violations of the Railway Labor Act (RLA). BMWE asserted that BNSF improperly reduced the number of maintenance-of-way workers it utilized in favor of subcontractors, failed to exert every reasonable effort to maintain the collective bargaining agreements (CBAs)

between BNSF and BMWE, and failed to deal with BMWE in good faith. BNSF filed a motion to dismiss, asserting that the district court lacked subject matter jurisdiction because the action was a "minor dispute" under the RLA, which mandates resolution through binding arbitration. The district court[1] granted the motion, agreeing with BNSF that the dispute was minor and thus the district court lacked jurisdiction. BMWE appeals, asserting that this decision was in error. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

BMWE represents BNSF's maintenance-of-way employees for the purposes of collective bargaining under the RLA. Maintenance-of-way employees are responsible for the tasks associated with maintaining the railway for usage, including constructing, inspecting, repairing, renewing, and maintaining the track, right of way, bridges, buildings, and other structures. BMWE and BNSF are parties to multiple CBAs that dictate various elements of the relationship between the parties, including, as relevant here, the circumstances under which BNSF may utilize subcontractors, not union members, to perform maintenance-of-way work. Since 2016, BNSF has reduced the number of BMWE maintenance-of-way workers; BNSF ties the reduction to an evolving approach to engineering needs, production modifications, and improved planning, while BMWE asserts the reduction is caused by BNSF increasingly relying on non-union subcontractors to perform the work.

Based on this overall decrease in BMWE maintenance-of-way employees, BMWE initiated this action alleging that BNSF had reduced the maintenance-of-way workforce by 19% between 2016 and 2023, while increasing the use of subcontractors for the same work. BMWE asserted that this violated § 2 First of the RLA, 45 U.S.C. § 152 First, which requires that BNSF "exert every reasonable effort" to maintain its CBAs with BMWE and to deal with BMWE in good faith.

---

[1]The Honorable Robert F. Rossiter, Jr., Chief Judge, United States District Court for the District of Nebraska.

Specifically, BMWE alleged that BNSF was improperly utilizing subcontractors over BMWE members by claiming that BNSF lacked the requisite number of employees and failed to make serious efforts to hire and increase the number of maintenance-of-way employees. BMWE promptly moved for summary judgment, asserting that it was entitled to judgment as a matter of law declaring that BNSF violated the RLA. BNSF then filed a motion to dismiss BMWE's complaint, asserting that the district court lacked subject matter jurisdiction over the claim. BNSF also filed a motion to stay the motion for summary judgment pending resolution of the motion to dismiss, which the district court granted. The district court then granted BNSF's motion to dismiss, agreeing with BNSF that it lacked subject matter jurisdiction to hear the claim.

The district court first discussed the dictates of the RLA and noted that the RLA requires that the railway and union engage in negotiations over labor disputes. Then the district court noted, pursuant to the RLA, if the negotiations are unsuccessful, a "minor" dispute must proceed in arbitration, while a "major" dispute may be filed in federal court. The district court explained that there is no bright-line differentiation between major and minor disputes but recounted generally that major disputes typically involve disputes about the formation of CBAs while minor disputes typically involve disputes interpreting specific terms of CBAs. The district court then stated the rule that, where there is any doubt about the classification of a specific dispute, the dispute should be considered minor.

The district court then determined that, under this framework, the dispute between BMWE and BNSF was minor. The district court concluded that the dispute involved the interpretation and application of the CBAs, relying on caselaw cautioning for restraint in exercising federal jurisdiction where the dispute even remotely touches upon terms of the CBAs. The district court also noted that BMWE did not expressly contend that the dispute was major, arguing instead that the dispute was in essence about BNSF "rendering itself unable to comply with" the CBAs, squarely implicating the dictates of § 2 First and that BNSF "exert every reasonable effort" to maintain the CBAs and deal in good faith. The district court rejected this

argument, noting that "the issues [BMWE] present[ed] effectively turn[ed] on the proper interpretation and application of the terms of its [CBAs] and past practices with the railway." Mindful of the rule that "dismissal is the only option" where any doubt remains about the nature of the dispute, the district court granted the motion to dismiss based on a lack of subject matter jurisdiction. The district court also denied the motion for summary judgment as moot and dismissed the case with prejudice.

## II.

BMWE asserts that the district court erred when it concluded the dispute was "minor" and that the district court thus lacked subject matter jurisdiction. Specifically, BMWE asserts that its claim that BNSF has failed to comply with the duty to exert every reasonable effort to maintain the CBAs states a valid cause of action that fits within the jurisdiction of federal courts as a "major" dispute, and casting it as a minor dispute would effectively read § 2 First out of the statutory scheme. According to BMWE, the dispute does not involve the interpretation of the CBAs, which would be a minor dispute, and instead involves BNSF's intentional failure to comply with the CBAs. Finally, BMWE asserts that the district court erroneously placed the burden on BMWE to establish jurisdiction when that burden properly rests with BNSF. "We review the question of subject matter jurisdiction de novo." Jenisio v. Ozark Airlines, Inc. Ret. Plan for Agent & Clerical Emps., 187 F.3d 970, 972 (8th Cir. 1999).

The RLA "provid[es] a comprehensive framework for resolving labor disputes" between a railway and a union. Wheeler v. St. Louis Sw. Ry. Co., 90 F.3d 327, 329 (8th Cir. 1996) (citation omitted). Section 2 First of the RLA requires

> all carriers, their officers, agents, and employees to exert every
> reasonable effort to make and maintain agreements concerning rates of
> pay, rules, and working conditions, and to settle all disputes, whether
> arising out of the application of such agreements or otherwise, in order
> to avoid any interruption to commerce or to the operation of any carrier

-4-

growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. § 152, First. Where a dispute arises between a railway and a union, the nature of the dispute dictates the procedural mechanism by which it must be resolved. See Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers, Transp. Div. v. Kansas City S. Ry. Co., 126 F.4th 603, 607 (8th Cir. 2025). "[D]isputes 'are classified as either major or minor.' Major disputes involve 'the formation of collective[-]bargaining agreements or efforts to secure them,'" while "[m]inor disputes 'relate[ ] either to the meaning or proper application of a particular provision' in a collective-bargaining agreement." Id. (second and fourth alterations in original) (citations omitted); see also Schiltz v. Burlington N. R.R., 115 F.3d 1407, 1413 (8th Cir. 1997) ("Major disputes are defined as those disputes that create contractual rights between railroads and their employees; minor disputes involve the enforcement of those contractual rights.").

The distinction between major and minor disputes "is important when establishing jurisdiction because minor disputes must be submitted to binding arbitration" before the National Railroad Adjustment Board (NRAB). Int'l Ass'n of Sheet Metal, 126 F.4th at 607 (citation omitted); see 45 U.S.C. § 153 First (i). Where "there is any doubt about whether the dispute 'require[s] . . . interpret[ing] any term of a collective-bargaining agreement,' dismissal is the only option." Avina v. Union Pac. R.R. Co., 72 F.4th 839, 843 (8th Cir. 2023) (alterations in original) (citation omitted), cert. denied, 144 S. Ct. 555 (2024) (alterations in original). In the end, "we have explained that 'it is not our function to interpret or construe the language of the collectively bargained-for agreements between the parties . . . ; rather, our function is to determine whether [the] case implicates a question of contract interpretation.'" Int'l Ass'n of Sheet Metal, 126 F.4th at 607 (alterations in original) (citation omitted).

The district court properly dismissed the case for lack of subject matter jurisdiction. Here, BMWE's arguments all hinge on the interpretation of the CBAs and whether BNSF violated the CBAs through its increased use of subcontractors

who were not members of the union. The allegations in the Complaint all relate to BNSF's obligations under the CBAs regarding its use of subcontractors and BMWE members. In other words, in this action, BMWE asks this Court to "enforce[ its] contractual rights" under the CBAs, which constitutes a minor dispute. Schiltz, 115 F.3d at 1413. Because the "case implicates a question of contract interpretation," this Court lacks jurisdiction to consider the question as it is within the sole province of the NRAB to do so. Sheet Metal Workers' Int'l Ass'n v. Burlington N. R.R. Co., 893 F.2d 199, 203 (8th Cir. 1990) (citation omitted).

BMWE tries to avoid this conclusion by casting its lawsuit as a direct violation of § 2 First, but this argument has been rejected by other Circuits. See, e.g., Bhd. of Maint. of Way Emps. Div./IBT v. Norfolk S. Ry. Co., 745 F.3d 808 (7th Cir. 2014); Bhd. of Maint. of Way Emps. v. CSX Transp., Inc., 143 F. App'x 155 (11th Cir. 2005). In CSX, the union attempted to cast its contractual violations as a statutory violation of § 2 First. 143 F. App'x at 161. The Eleventh Circuit found that it lacked jurisdiction to consider the dispute because resolution of the dispute "require[d] the interpretation and application" of the contracts between the union and the railway. Id. at 162. It noted that the union's attempted reading of § 2 First could "effectively circumvent[ the] minor dispute rule" because "[v]irtually any dispute over the meaning of a term of an agreement could be recast as a dispute over the corresponding § 2 First requirements." Id. at 161-62.

Similarly, in Norfolk, the Seventh Circuit rejected BMWE's use of § 2 First and concluded that an interpretation of a railway's past practices when bargaining with BMWE counted as a minor dispute, stripping the court of subject matter jurisdiction. 745 F.3d at 814. In so doing, the Seventh Circuit also distinguished the Supreme Court's holding in Chicago & Northern Western Railway Co. v. United Transportation Union, 402 U.S. 570 (1971) (CNW), which BMWE relies upon in this case. CNW was inapposite in Norfolk because "the railroad filed suit *after* it exhausted the formal procedures mandated for a major dispute," giving a federal court subject matter jurisdiction. Norfolk, 745 F.3d at 815 (emphasis added). Additionally, the CNW Court warned that "the vagueness of the obligations under

§ 2 First could provide a cover for freewheeling judicial interference in labor relations." CNW, 402 U.S. at 583. Thus, the Norfolk court dismissed BMWE's claim for lack of jurisdiction. We agree with the reasoning of both the Seventh and Eleventh Circuits and apply it here.

All of BMWE's other arguments fail for similar reasons, as the ultimate inquiry here is whether the dispute requires interpretation of a contractual provision in the CBAs. BMWE claims that focusing solely on the "interruption to commerce or the operation of any carrier" language in § 2 First as a barrier to jurisdiction by requiring an active disruption to commerce is inconsistent with the plain language of the provision because it "effectively deletes from the statute the general command to exert every reasonable effort to maintain agreements." According to BMWE, § 2 First applies more broadly than to only those situations where there is a threatened or actual disruption to commerce. But as BNSF points out, all of the cases relied upon by BMWE in making this argument actually involve situations with an ongoing threat to commerce; no case expands the court's jurisdiction when there is no threat to commerce. See, e.g., Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l, 238 F.3d 1300, 1302-03 (11th Cir. 2001) (involving pilots who refused to work extra shifts in violation of agreement resulting in cancellation of hundreds of flights). BMWE also argues that the duty under the covenant of good faith and fair dealing is analogous to the commands in § 2 First and imposes an independent duty on BNSF. However, this argument is untenable as it directly undermines our duty to "avoid 'freewheeling judicial interference in labor relations'" unless it is "the only practical, effective means of enforcing the command of § 2 First." Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Iowa N. Ry. Co., 37 F.4th 1399, 1410 (8th Cir. 2022) (citation omitted). Here, BMWE has an available remedy: arbitration. It must seek this avenue of relief, as mandated by the RLA. The district court properly dismissed the case for lack of subject matter jurisdiction.

## III.

For the foregoing reasons, we affirm the judgment of the district court dismissing BMWE's complaint.

_____